**COURIER–CITIZEN COMPANY,**
Plaintiff, Appellant,

v.

**BOSTON ELECTROTYPERS UNION NO. 11, INTERNATIONAL PRINTING & GRAPHIC COMMUNICATIONS UNION OF NORTH AMERICA, Defendant, Appellee.**

No. 82–1181.

United States Court of Appeals,
First Circuit.

Argued Sept. 17, 1982.

Decided March 14, 1983.

David J. Rosen, New York City, with whom Clifton, Budd, Burke & DeMaria, New York City, was on brief, for appellant.

Mark G. Kaplan, Boston, Mass., with whom Kaplan & Riley, Boston, Mass., was on brief, for appellee.

Before DAVIS,* CAMPBELL and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Courier-Citizen Company (the "Company") brought suit under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976) to vacate an arbitration award in favor of the Boston Electrotypers Union No. 11 (the "Union"). The Union counterclaimed for enforcement. The United States District Court for the District of Massachusetts refused to vacate and entered judgment enforcing the award. The Company appeals.

## I.

In May 1975, after installing labor-saving technology at its plant in Lowell, Massachusetts, the Company laid off several journeymen electrotypers represented by the Union. It was agreed the layoffs should be in reverse order of seniority, but there was disagreement as to how to compute seniority. Grievances involving that question went to arbitration before Robert Stutz.

Shortly after the layoffs, the Company hired one of the laid off journeymen, Richard Grant, to fill a vacant non-unit laborer's position. Grant was junior among the laid-off journeymen, and the Union grieved [1] his hiring as a laborer, asserting that the collective bargaining agreement required the Company to offer vacant laborers' positions to laid-off journeymen in order of the journeymen's unit seniority. At the arbitration of this grievance before Professor Hogan, the parties framed the issues as follows:

1. Is the matter arbitrable?

2. Did the Company violate the contract by placing Richard Grant in a laborer's job on June 23, 1975? If so, what shall be the remedy?

On February 12, 1976 Professor Hogan made an initial finding (Hogan I). Holding the matter to be arbitrable, Hogan sustained the Union's claim that the laborer's job should have gone to the senior journeyman on layoff status, not to the more junior Grant.[2] Hogan, however, did not yet know who was the most senior journeyman as all issues pertaining to bargaining unit seniority had not yet been resolved by arbitrator Stutz. Hogan accordingly did not direct the Company to recall a particular individual nor did he make a back pay award. Instead, he ordered the Company to "offer that Laborer's job to the senior journeyman who was on layoff status on [June 23, 1975], including in this determination the effect, if any, of the Stutz award." Hogan also ordered that the senior journeyman "be made whole for the difference between what he would have received had he been on the job instead of Richard Grant (at Grant's hourly

---

* Of the Federal Circuit, sitting by designation.

1. Under the terms of the collective bargaining agreement, a grievance is defined as "any difference between the Employer and the Union or its members." The grievant here was the Union, not a particular employee.

2. The contractual dispute centered around three provisions of the collective bargaining agreement. Section 14.01 provides that "[i]n case of the reduction of the force, layoffs are to be made in reverse order of priority. Men laid off shall be rehired in priority." Section C.07 provides that "if there are one or more Journeymen who are laid off and available and if the Company desires to fill the laborer's job(s), ... then such laid off Journeymen(man) will be used in the laborer's job(s)." Section C.08 provides that "[w]hile employed as laborers, such Journeymen will be paid the then current rate for laborers." The Company does not now challenge the arbitration award insofar as it sustains the Union's contention that these provisions require it to hire the senior journeyman on layoff status to fill a laborer vacancy.

rate) and such monies, if any, earned by him elsewhere during the hours Grant was on the job." Finally, Hogan retained jurisdiction "to resolve any unresolved disputes between the parties on the selection and/or backpay questions." The Company did not then object to Hogan's retention of jurisdiction.

Six months later, on July 26, 1976, arbitrator Stutz resolved the relevant seniority issue in a ruling that identified Gerald Kennedy as the senior journeyman on layoff status at the time the Company had recalled Richard Grant.[3]

The Union thereupon insisted that the Company offer the laborer's job and back pay to Kennedy. The Company refused. It contended (as it had before Hogan) that the contract provision requiring it to fill vacant laborer positions with laid-off journeymen was illegal, and it noted that it had filed a charge to this effect with the National Labor Relations Board.[4] In September 1976 the Union asked Professor Hogan to reopen the arbitration under the provision in Hogan I retaining jurisdiction. The Company strenuously objected and notified Hogan that it would not participate in the hearing.

Hogan proceeded nonetheless. After conducting an ex parte hearing, he rendered a decision on March 3, 1977 (Hogan II), awarding $7,600 in back pay to Gerald Kennedy.[5] This amount equaled the wages Kennedy would have earned between June 23, 1975 (the date of Grant's improper recall as a laborer) and April 26, 1976 (the date Kennedy accepted a position with the Dennison Manufacturing Company in mitigation of his losses). Kennedy had obtained the position with Dennison, a company with which the Courier-Citizen Company had no relationship, when Dennison requested the Union to refer an available member to fill a vacant position. Adhering to its policy of allocating benefits according to seniority, the Union referred Kennedy to fill the job at Dennison. In Hogan II the arbitrator also ordered the Company to pay $7,600 to a second laid-off journeyman—Thomas Sparks. This amount corresponded to the amount Kennedy earned at Dennison from April 26, 1976 to January 31, 1977, the date Kennedy was placed in the laborer's job. The award to Sparks rested on the premise that the Company's failure to reinstate Kennedy promptly precluded Sparks's referral to Dennison as the next most senior journeyman.

## II.

We consider first the Company's argument, rejected by the Regional Direction of the Board, *see* note 4, *supra,* that the contract provision requiring laid-off journeymen to be hired for vacant laborers' positions, *see* note 2, *supra,* violates the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.* (the "Act").[6] Two facts are

---

**3.** Stutz refused, however, to require Kennedy's reinstatement as a journeyman, finding that it was the Union's—not the Company's—fault that his seniority was miscalculated. It seems that when the Company decided in May 1975 to lay off journeymen, the Union had insisted that its own erroneous seniority list rather than the Company's correct one be followed in determining which employees were to be retained.

**4.** The Company had filed a charge with the Regional Director of the Board on May 11, 1977 alleging that the Union's attempts to enforce the contract provision requiring the Company to recall journeymen to fill laborer's jobs violated the sections 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act, 29 U.S.C. §§ 158(b)(1)(A), (b)(2). The Regional Director declined to issue a complaint and the Company unsuccessfully appealed this refusal through administrative channels. The Company raises

a similar statutory argument here, which we consider below.

**5.** Kennedy accepted a laborer's position on January 31, 1977 terminating the Company's back pay liability. Hogan thus had no occasion to rule on the issue of reinstatement.

**6.** It is, of course, the Board, not the courts, which has primary jurisdiction to determine what is and is not an unfair labor practice, and to provide affirmative remedies. *See San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). Nonetheless, as the federal courts may not enforce a contractual provision that violates section 8 of the Act, they may be obliged at times, in the course of resolving a contract dispute, to decide whether or not such a violation exists. *See Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 86, 102 S.Ct. 851, 860, 70 L.Ed.2d 833 (1982).

central to the Company's argument. First, the Union was certified as the exclusive collective bargaining representative of the journeymen, but it had no right to represent the Company's laborer employees. Second, the collective bargaining agreement that the Union negotiated with the Company on behalf of the journeymen contained a union security clause requiring newly hired journeymen to join the Union within 30 days of the commencement of employment. This clause ensured, as a practical matter, that journeymen laid off by the Company would all be members of the Union. Thus, the disputed recall provision is said to require the Company to fill non-unit laborer's jobs with members of the journeyman printers' local before considering non-union applicants.

The Company now argues that, by placing its members in laborers' jobs, the Union has illegally extended its representational rights beyond the bargaining unit it has been certified to represent. This supposed attempt to represent non-unit employees is said to amount to a failure to bargain in good faith, in violation of section 8(b)(3) of the Act. *See Sperry Systems Management Division v. NLRB,* 492 F.2d 63, 68 (2d Cir.), *cert. denied,* 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974). In *Sperry,* the Union sought to compel the employer to pay the higher wages and benefits, and to observe certain job security rules found in the Union's New York collective bargaining agreement, to technicians employed at a non-unit plant in California. The Second Circuit ruled that the Union's activities amounted to a *sub rosa* attempt to become the *de facto* bargaining agent of the non-unit employees, and this violated section 8(b)(3). *Id.* at 68–69. The Company argues that, like the union in *Sperry Systems,* the printers' local has attempted to extend the terms of its collective bargaining agreement to employees outside its bargaining unit.

Here, however, neither the contract provision itself nor Professor Hogan's award attempts to apply the terms and conditions outlined in the Union's collective bargaining agreement to non-unit employees. The disputed clause merely gives priority to laid-off unit employees in obtaining other employment at the Company. The clause is thus addressed to the economic interests of unit employees. Indeed, the collective bargaining agreement specifies that journeymen hired as laborers will be paid at the prevailing laborers' rate; the arbitrator's back pay award to Kennedy was based on the wages he would have earned as a laborer, not as a journeyman. The recall clause, therefore, works no enlargement of the Union's representational rights.

In fact, under pressure of an unfair labor practice charge brought by Richard Grant soon after he was recalled to fill the laborer's job, the Union discontinued efforts to exact Union dues from Grant. The Union was apparently persuaded that it had no right to continue to represent a former unit member who had ceased to be such.

The Company also contends that the preference given laid-off journeymen when hiring laborers illegally discriminates on the basis of Union affiliation. The Company reads the disputed clause as though requiring it to fill non-unit jobs with members of the journeymen printers' local. It argues that such discrimination interferes with the section 7 rights of employees to refrain from engaging in concerted organizational activity. *See* 29 U.S.C. § 157. Section 8(b)(1)(A) of the Act makes it an unfair labor practice for a labor organization to "restrain or coerce employees in the exercise of rights guaranteed in section 157," 29 U.S.C. § 158(b)(1)(A), and section 8(b)(2)

The Union argues that we should not reach the merits of the instant unfair labor practice claim because the Regional Director has already considered the charge and refused to issue a complaint. *See* note 4, *supra.* The Union argues that his refusal was tantamount to Board rejection of the Company's present claim. However, it has been held that the

Regional Director's refusal to issue a complaint does not collaterally estop the charging party from litigating the matter in a later suit under section 301. *See Edna H. Pagel, Inc. v. Teamsters Local 595,* 667 F.2d 1275, 1280 n. 12 (9th Cir.1982) (collecting cases). We therefore consider the merits of the Company's unfair labor practice claim.

makes it illegal "to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) (prohibiting employers from encouraging or discouraging Union membership)." 29 U.S.C. § 158(b)(2).

■ There is, however, a clear distinction between a union's lawful efforts to obtain benefits for the employees it represents and prohibited discriminatory activities. Many of the benefits a union secures from employers—such as access to grievance procedures, wage increases, and pension benefits—tend to encourage union membership, but they do not violate section 8(b)(2). *See Local 357, International Brotherhood of Teamsters v. NLRB,* 365 U.S. 667, 675–76, 81 S.Ct. 835, 839–40, 6 L.Ed.2d 11 (1961). It is when a union encourages membership by discriminating against employees who have exercised their right to refrain from membership that a violation occurs. *See Local 357, International Brotherhood of Teamsters v. NLRB,* 365 U.S. at 676, 81 S.Ct. at 840; *Radio Officers' Union v. NLRB,* 347 U.S. 17, 43, 74 S.Ct. 323, 337, 98 L.Ed. 455 (1954); *NLRB v. Local 483, International Association of Bridge Ironworkers,* 672 F.2d 1159, 1164 (3d Cir.1982); *NLRB v. New York Typographical Union,* 632 F.2d 171, 181 (2d Cir.1980).

■ The contractual preference in issue does not discriminate on the basis of Union affiliation as such. Every member of the journeyman printers' bargaining unit is entitled to the preference without regard to Union status.[7] The collective bargaining agreement distinguishes among these employees not on the basis of their Union status but rather on the basis of their seniority. The preference for laid-off journeymen does, it is true, disadvantage other prospective laborer applicants by reducing the available positions. But the granting of

any economic benefit to a unionized group will often diminish the pool of jobs and benefits available for others. Limiting ourselves to the facts in this record, it is not clear to us that granting former employees this sort of priority to jobs in the same company is unreasonable or inconsistent with sound labor policy. The Regional Director apparently saw nothing objectionable, and nothing has been called to our attention which would presently lead us to classify this benefit as one which employees are forbidden to obtain in the collective bargaining process. We therefore reject the Company's contention that the disputed clause violated section 8(b)(2) or related provisions.

### III.

Contending that Professor Hogan lacked authority to issue the second phase of his award, the Company argues that the district court erred in refusing to vacate Hogan II in its entirety.[8] The Company bases its argument on the common law rule that when "arbitrators have executed their award and declared their decision they are *functus officio* and have no power or authority to proceed further." *Mercury Oil Refining Co. v. Oil Workers International Union,* 187 F.2d 980, 983 (10th Cir.1951). The functus officio doctrine, which literally refers to the exhaustion of the arbitrator's function, was strictly applied at common law to preclude an arbitrator from vacating, modifying, supplementing, or correcting his award. *See* Annot., 104 A.L.R. 710 (1936). The doctrine rested in part on the view that arbitrators—as creatures of contract—were limited to deciding the dispute placed before them by the parties, and in part on the courts' hostility towards arbitration as a mechanism to resolve disputes.

---

**7.** To be sure, because of the union security clause, all journeymen will be Union members, but Congress has specifically authorized such clauses. *See* 29 U.S.C. § 158(a)(3). The point is, the rehire preference is a bargained-for economic benefit bestowed on all unit members without discrimination.

**8.** In addressing the Company's argument that Hogan was functus officio, we consider only Hogan's authority to reconvene the proceeding to clarify his prior award to Gerald Kennedy. We take up the Company's challenge to Hogan's award to Thomas Sparks in a later section of this opinion. *See* Part IV, *infra.*

■ In fashioning a substantive law of labor relations pursuant to section 301 of the Labor Management Relations Act, *see Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957), the federal courts have refused to apply the strict common law rule of functus officio. It is now established that courts may order an incomplete award resubmitted to the original arbitrator. In *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the arbitrator awarded back pay to eleven discharged employees, but he failed to determine the amount of wages the employees had earned in mitigation of their losses. In upholding resubmittal, the Fourth Circuit said that "the rule forbidding the resubmission of a final award, which was developed when the courts looked with disfavor upon arbitration proceedings, should not be applied today in the settlement of employer-employee grievances." *Enterprise Wheel & Car Corp. v. United Steelworkers,* 269 F.2d 327, 332 (4th Cir.1959), *aff'd in relevant part,* 363 U.S. at 599, 80 S.Ct. at 1362. In *Local 2222, International Brotherhood of Electrical Workers v. New England Telephone & Telegraph Co.,* 628 F.2d 644 (1st Cir.1980), this court similarly upheld an order of the district court remanding a dispute to the board of arbitration that had issued the original award.

■ While conceding that a federal court may order an incomplete award resubmitted to the original arbitrator, the Company contends that Professor Hogan's initial award conclusively resolved all of the issues submitted and was therefore complete. This, however, is simply not so, as Hogan clearly recognized at the time. Hogan was unable to identify the most senior journeyman or to specify the amount of back pay to which that person would be entitled. Recognizing that he lacked the information to issue a complete award, Hogan sketched the outlines of an appropriate remedy. After Stutz issued his clarification, Hogan I remained incomplete in the absence of voluntary implementation. It failed to identify Kennedy or to specify the remedy in definite terms. Thus, Hogan I suffered from precisely the same incompleteness that led this court in *New England Telephone* and the Supreme Court in *Enterprise Wheel & Car* to resubmit the dispute to the original arbitrator. The Union had evidently anticipated this difficulty when it had requested Hogan to retain jurisdiction at the time he issued Hogan I. When it became clear that the Company would not voluntarily comply with the remedy described but not fleshed out in Hogan I, the Union requested Hogan to reopen the proceeding and issue a definitive award. Properly viewed, therefore, the award to Kennedy in Hogan II supplements or completes the initial award; it does not displace it.

We find nothing in the cases the Company cites that suggests that this sensible, efficient procedure runs afoul of the functus officio doctrine. In *Mercury Oil Co. v. Oil Workers International Union,* 187 F.2d 980, and in *Indigo Springs, Inc. v. Hotel Trades Council,* 59 L.R.R.M. 324 (N.Y.Sup. Ct.1965), the courts struck down a second award that substantially modified the arbitrator's first award. And in *Parker v. Mercury Freight Lines, Inc.,* 307 F.Supp. 789 (N.D.Ala.1969), the court held that the arbitrator lacked authority to vacate his initial award. In each of these cases, the arbitrator issued a second award fundamentally inconsistent with the first award. They are plainly inapposite here, where the second award simply fleshed out the remedy announced initially.

The Company seems to contend that Hogan could not reopen absent a court order specifically granting him authority to do so. While it may be prudent on some occasions for an arbitrator to obtain such an order before reopening an award, *see* F. Elkouri & E. Elkouri, *How Arbitration Works* 240–241 n. 240 (3d ed. 1973), the Company has failed to cite any recent judicial decision vacating a supplementary award in a case where, as here, the arbitrator had sua sponte reopened an incomplete award in appropriate circumstances. To force the parties to return to the arbitrator to obtain an award identical to the one vacated would simply undermine arbitration as a mecha-

nism for resolving labor disputes cheaply and efficiently. *See* O. Fairweather, *Practice and Procedure in Labor Arbitration* 350 (1973). We thus reject the Company's argument that the functus officio doctrine requires vacation of Hogan II insofar, at least, as Kennedy is concerned.

### IV.

Apart from the functus officio argument, the Company challenges Hogan II on the ground that it was a gross abuse of arbitral discretion. The Company points to Professor Hogan's order in Hogan I that it reinstate the senior laid-off journeyman, "including in this determination the effect, if any, of the Stutz award." The Company argues that Hogan contradicted this instruction by later ignoring critical aspects of the Stutz award. In the Stutz award, Stutz found that Kennedy would never have been laid off but for the Union's incorrect assessment of his seniority. *See* note 3, *supra.* As a result, Stutz refused to order the Company to pay back wages to Kennedy on the theory that any loss he suffered was attributable to the Union's conduct alone. After the Hogan proceeding was reconvened, the Company argued that the Stutz award established the Union's responsibility for Kennedy's improper layoff. But for the Union's error, Kennedy would have still been employed as a journeyman when Grant was recalled; thus, the Company argued that the Union should reimburse Kennedy for wages lost by reason of the Grant hiring.

Hogan refused to adopt the Company's interpretation of his prior reference to the Stutz proceeding, however. In Hogan's view, the Stutz proceeding was relevant only insofar as it identified Gerald Kennedy as the senior laid-off journeyman. He based his decision on the distinction between the two proceedings. The parties had requested Stutz to determine the propriety of Kennedy's layoff. Hogan, however, was charged with fashioning an award to remedy the Company's wrongful recall of Grant to fill a non-unit position. Viewing the cases and the back pay issues as differ-

ent, Hogan refused to extend the rationale of the Stutz decision to foreclose a back pay remedy for Kennedy.

 Courts have generally refused to rule on the precedential effect of an arbitration award on future awards, taking the position that the question is properly resolved through arbitration. *See Oil Workers International Union v. Rohm & Haas, Texas, Inc.,* 677 F.2d 492, 494 (5th Cir.1982) *quoting New Orleans Steamship Association v. General Longshore Workers,* 626 F.2d 455, 468 (5th Cir.1980), *aff'd sub nom., Jacksonville Bulk Terminals, Inc. v. International Association of Longshoremen,* —— U.S. ——, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982); *Westinghouse Elevators of Puerto Rico, Inc. v. S.I.U. de Puerto Rico,* 583 F.2d 1184, 1186–87 (1st Cir.1978). Absent a contractual provision to the contrary, an arbitrator is free to decide that rigid adherence to a prior award would impair the process of flexibly resolving current or future disputes. *Riverboat Casino, Inc. v. Local Joint Executive Board of Las Vegas,* 578 F.2d 250, 251 (9th Cir.1978). Here there was no contract provision governing the application of prior awards to future disputes. Hogan was free to bring his own judgment to bear on the question, and we decline to disturb the district court's decision enforcing the award to Kennedy.

### V.

We next consider the back pay award to Thomas Sparks. Professor Hogan justified this as making up for losses incurred when the Company failed to comply with his award. Hogan I, issued in February 1976, had directed the Company to offer the laborer's job to the most senior laid-off journeyman (although at this time Hogan himself did not know who that was). The Stutz award, identifying Kennedy as the senior man, did not come out until July 26, 1976. By then, Kennedy was already employed at the Dennison Company, in a job obtained in April 1976 pursuant to referral from the Union. Since Kennedy, as later confirmed, was the most senior journeyman, he received the Dennison job ahead of

Thomas Sparks, the next most senior laid-off journeyman. Professor Hogan awarded Sparks what Sparks would have received at Dennison had he, not Kennedy, been given the Dennison job starting in April 1976 and running through January 1977 when Kennedy left Dennison to become a laborer at the Company. Hogan justified this on the ground that "Had the Company complied with the arbitrator's award and placed Kennedy on the laborer's job, the person who would have been referred to the Dennison job pursuant to the Union's referral procedure and agreement ,with the Company would have been Sparks."

We have some difficulty with this formulation. The record would indicate that Kennedy was not confirmed as the most senior journeyman until the Stutz award of July 26, 1976. If the award to Sparks was intended to make up for the Company's stubbornness in refusing to abide by Hogan I, we do not see how it could have been expected to act until after the Stutz award came down in July. Yet Sparks was awarded back pay from April—a time when it was still unclear, officially at least, who was the senior journeyman.

 The problem with the Sparks award is even more fundamental than this, however. While an arbitrator has broad power to fashion remedies on issues the parties have empowered him to resolve, *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361; *Bettencourt v. Boston Edison Co.,* 560 F.2d 1045, 1050 (1st Cir.1977), he lacks authority to decide questions the parties have not agreed to submit to him. *See United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. at 597–98, 80 S.Ct. at 1361; *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local 1,* 611 F.2d 580, 584 (5th Cir.1980); *Textile Workers Union v. American Thread Co.,* 291 F.2d 894, 897 (4th Cir.1961). Courts will not enforce awards exceeding the authority conferred in the submission. *See, e.g., Retail Store Employees Union Local 782 v. Sav-On Groceries,* 508 F.2d 500, 503 (10th Cir.1975). We are unable to locate authority for the Sparks award in the parties' submission agreement.

The submission agreement posed the question: "Did the Company violate the contract by placing Richard Grant in the laborer's job .... If so, what shall be the remedy?" Thereafter, in Hogan I, the arbitrator ruled that the Company had violated the contract by putting Grant in a laborer's job, directed that the senior journeyman in layoff status be offered the job, and further directed that the latter be made whole. Neither the original submission nor Hogan I suggested that back pay for some other employee was to be involved in the arbitration. The Union first presented the Sparks claim to Hogan at the ex parte hearing that took place well after the issues framed in Hogan I had been explored and largely resolved by the arbitrator.

While the Company can be held accountable for Kennedy's losses resulting from its failure to comply promptly with Hogan I, the award to Kennedy differs critically from the award to Sparks. Hogan's finding that the Company violated the collective bargaining agreement in failing to recall Kennedy was squarely within the submission. The wages Kennedy lost when the Company failed to comply with Hogan I had their genesis in Hogan's finding of an initial breach. But any link between the wages Sparks lost at Dennison and the terms of the collective bargaining agreement is far more attenuated. Indeed, if Sparks's lost opportunity at Dennison can be traced to the agreement at all, it raises a separate issue, distinct from that in the original submission, which should be separately grieved.

It is true that the back pay awarded in *International Union of Electrical Workers v. Peerless Pressed Metal Corp.,* 489 F.2d 768, 769 (1st Cir.1973), was a remedy not expressly stated in the submission agreement. But in *Peerless* we implied, as within the contemplation of the parties, a back pay remedy widely and commonly employed by arbitrators. F. Elkouri & E. Elkouri, *How Arbitration Works* 243–44 (3d ed. 1973).

By contrast, it cannot be said that the parties normally suppose that an arbitrator will fashion a remedy similar to the Sparks award involving a third person whose job was never initially placed in issue at all. Rather the parties typically assume that the arbitrator will limit his award of damages to the employees directly harmed by the employer's breach of the submitted provision of the collective bargaining agreement. Thus, there is merit to the Company's claim that it was unfairly surprised by the award to Sparks. When the Company determined that it would not participate in Hogan II, it presumably believed that it risked only the adumbration of the remedy outlined in Hogan I. Had it known that an award to Sparks was at stake, the Company may have appeared to contest the matter.

We consider one final argument in favor of enforcing the award to Sparks. Such an award, it could be argued, would encourage voluntary compliance with an arbitrator's ruling, thereby curtailing delaying tactics that may threaten to undermine the finality of arbitration awards. Our decision, however, does not foreclose the remedies normally available when a party refuses to comply with an enforceable award. These remedies include an award of attorneys' fees when a party "without justification" contests an enforceable award. *See, e.g., International Association of Machinists v. Texas Steel Co.,* 639 F.2d 279, 283 (5th Cir.1981); *International Union of Electrical Workers v. Peerless Press Metal Corp.,* 489 F.2d at 769. Nor does our opinion preclude an employee like Sparks from initiating a grievance claiming compensation for a loss caused by the Company's wrongful delay, although we express no opinion as to whether such a grievance would lie within the provisions of the contract. But, in any case, the arbitrator exceeded his mandate here.

We vacate the district court's judgment enforcing the award to Sparks and remand the case with directions that the district court vacate the award to Sparks. In all other respects, we affirm the district court's judgment.

*Affirmed in part; vacated in part and remanded.*