NEW ENGLAND JOINT BOARD RE-
TAIL, WHOLESALE & DEPART-
MENT STORE UNION, AFL–CIO,
Plaintiff,

v.

DECATUR AND HOPKINS
COMPANY, Defendant.

Civ. A. No. 86–1776–MA.

United States District Court,
D. Massachusetts.

April 29, 1987.

James T. Grady, Grady, Dumont & Dwyer, Boston, Mass., for plaintiff.

Jason Berger, P.C., Peabody & Brown, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

The plaintiff in this case ("the Union") seeks to vacate the remedy portion of an arbitrator's award. The award directs the defendant, Decatur and Hopkins Company, to provide reporting pay to certain employees represented by the Union. As the Union feels the employees are entitled to receive more pay than that specified in the award, it asks this Court to vacate the remedy portion of the award and to enter a declaratory judgment modifying the award. The company seeks to have the arbitrator's award upheld. Both parties have now moved for summary judgment.

### 1. Facts

The material facts as stated in the arbitrator's opinion are not disputed. They are set forth below.

Hurricane Gloria began to develop around September 20, 1985. Seven days later, there were indications that the hurricane might hit New England, although its probable path was uncertain. On September 27, Thomas Gibbons, the distribution manager for Decatur and Hopkins, arrived at work around 5:45 A.M. He was told that the owner of the company had just called and stated that the facility was to close for the day. At that time, the weather was sunny and balmy.

Employees who were scheduled to report for work at 6:00 A.M. or 7:00 A.M. began to arrive. Gibbons told them the company was closed and their names were put on a list. None of these employees were paid at all for that day.

At 8:30 A.M., Governor Michael Dukakis declared a state of emergency. He asked employers to close their businesses, he closed the State House, and he asked all people to stay indoors. High winds associated with the hurricane caused substantial damage to the roof and flashing of the company's facility.

The Union filed a grievance asking that those who had reported for work be paid for the day. It based its request on Article VIII, § 7, of the parties' collective bargaining agreement:

(a) If a full time permanent employee reports for work in accordance with his regular schedule without having been notified not to report for work, such employee shall be guaranteed eight (8) hours' work, or pay in lieu thereof, except where lack of work is caused by breakdowns, Acts of God, or circumstances beyond the reasonable control of the Employer. In case of severe snowstorm or plant closing, the Employer shall notify the employees as soon as possible, but in no event later than 6:00 AM via radio broadcast WHDH.

As the parties could not agree on the meaning of this provision, they submitted the following stipulated issue to an arbitrator pursuant to their collective bargaining agreement:

Has the Company violated the parties' collective bargaining agreement, particularly article VIII, § 7, by failing to pay certain employees eight hours pay, in lieu of notice not to report for work, when the Company closed on Friday, September 27, 1985? If so, what shall be the remedy?

After a hearing, the arbitrator made the following award:

The Company violated the parties' collective bargaining agreement, particularly article VIII, § 7, by failing to pay certain employees, in lieu of notice not to report to work, when the Company closed on Friday, September 27, 1985. The Company shall pay those employees who came to work for the time from the commencement of their scheduled assignment until 8:30 A.M. I shall retain jurisdiction only for the purpose of computing the remedy if the parties are unable to agree on those employees who are entitled to payment.

The Union then brought suit in this Court to vacate the remedy portion of the award.

### 2. Standard of Review

The Union requests that the award be modified so that it directs the company to

pay those employees who came to work on September 27 their wages for eight hours. My role in reviewing the arbitrator's award is quite limited. A federal court may not overrule the arbitrator's decision simply because the court believes its own interpretation of the contract would be a better one. *W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber Workers,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983). Unless the arbitral decision does not "dra[w] its essence from the collective bargaining agreement," a court is bound to enforce the award and is not entitled to review the merits of the dispute. *Id.,* quoting *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). At a minimum, one seeking to vacate an award must show that the award is "unfounded in reason and fact," or is based in reasoning "so palpably faulty that no judge or group of judges could ever conceivably have made such a ruling," or is mistakenly based on a crucial assumption which is "concededly a non-fact." *S.D. Warren Co. v. United Paperworkers' Int'l Union,* 815 F.2d 178, 182 (1st Cir.1987), citing *Bettencourt v. Boston Edison Co.,* 560 F.2d 1045, 1050 (1st Cir. 1977). This policy of extremely limited judicial review is based on the recognition that the Board of Arbitrators and not the courts have the expertise and ability required to most fairly and economically resolve labor disputes. *Local 369, Utility Workers Union v. Boston Edison Co.,* 752 F.2d 1, 5 (1st Cir.1984).

The arbitrator has broad power to fashion remedies on issues the parties have empowered him to resolve. *See Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361; *Courier–Citizen Co. v. Boston Electrotypers Union No. 11,* 702 F.2d 273, 281 (1st Cir.1983). However, the arbitrator does lack authority to decide questions the parties have not agreed to submit to him. *Courier–Citizen,* 702 F.2d at 281. Courts will vacate a decision beyond the scope of the issues submitted, as such an award exceeds the powers conferred on the arbitrator by the parties. *See United Steelworkers v. Warrior &*

*Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960); *Courier–Citizen,* 702 F.2d at 281; *Raytheon Co. v. Computer Distrib., Inc.,* 632 F.Supp. 553, 558 (D.Mass.1986).

### 3. Challenges to the Award

The Union seeks to vacate the remedy portion of the award on three grounds. I deal with each ground separately.

#### A. *Extent of Authority Granted through Stipulated Issue*

■ The Union argues that the arbitrator exceeded his authority by deciding a question the parties did not agree to submit to him. The Union bases this argument on the theory that the arbitrator had no discretion in fashioning his award. It claims that once the arbitrator determined that the company had violated the parties' collective bargaining agreement, he was bound to award the remedy provided in the agreement, namely, pay for eight hours. The company counters that the arbitrator received a broad grant of authority to determine the appropriate remedy.

The difficulty in assessing these competing views is that the stipulated issue is in itself somewhat ambiguous. The first question indicates that the determination to be made is narrow:

Has the Company violated the parties' collective bargaining agreement, particularly article VIII, § 7, by failing to pay certain employees eight hours pay, in lieu of notice not to report for work, when the Company closed on Friday, September 27, 1985?

In contrast, the second question implies that the arbitrator has broad authority to fashion the remedy:

If so, what shall be the remedy?

The first question thus implies that the arbitrator is to look at whether the company violated the collective bargaining agreement, with a special focus on the company's failure to pay eight hours of reporting pay. By leaving the remedy to the discretion of the arbitrator, however, the second question implies that the arbitrator can look at whether the company violated the

collective bargaining agreement in any manner. The arbitrator followed this second path in his analysis. He ultimately found that the company had violated the agreement, but not by refusing to give the workers eight hours of reporting pay. Instead, he found the workers were entitled to receive pay for the period between when they reported for work (6:00 A.M. or 7:00 A.M.) and when Governor Dukakis declared the state of emergency (8:30 A.M.).

I find the arbitrator did not exceed the authority submitted to him by the parties. Once he had determined that the company had violated the agreement, he answered the precise question put to him: What shall be the remedy?

Had the parties intended to limit the arbitrator's discretion in fashioning the remedy in the manner the Union urges, the second part of the stipulated issue would have been stated as follows: "If [a violation is found], the remedy shall be eight (8) hours pay." As the parties agreed to give the arbitrator the power to make the award he made, *see Warrior & Gulf Navigation Co.*, 363 U.S. at 582, 80 S.Ct. at 1352–53, I will not vacate the award on these grounds.

## B. *Fidelity of Award to Agreement*

■ The Union next claims that the award should be vacated because it conflicts with the express terms of the collective bargaining agreement. It asserts that the stated remedy for a violation of the notice requirement set forth in Article VIII, § 7, is eight hours of pay, not the 1.5 or 2.5 hours of pay awarded. The company argues that the award indeed draws its essence from the contract as it is based on the arbitrator's interpretation of the contract.

I disagree with the Union's assertion that the stated remedy in this case is eight hours pay for failure to notify the employees not to report for work. The contract states:

> If a full time permanent employee reports for work in accordance with his regular schedule without having been notified not to report for work, such employee shall be guaranteed eight (8) hours' work, or pay in lieu thereof, *ex-*

*cept where lack of work is caused by breakdowns, Acts of God, or circumstances beyond the reasonable control of the Employer.*

(emphasis supplied). The arbitrator found that at 6:00 A.M., when the company was closed, no state of emergency or Act of God existed which would have excused the company from the notification and pay provisions. By 8:30 A.M., however, a state of emergency did exist. At this point, the lack of work was due to an Act of God, and the company's liability for pay ceased. The Union's position that the contract explicitly calls for eight hours of pay is thus incorrect, as the contract states that "such employee shall be guaranteed eight (8) hours' ... pay ... *except where lack of work is caused by ... Acts of God.*" The employees' entitlement to reporting pay, if any, is left open to interpretation of the contract provision. The arbitrator based his decision on such an interpretation, and I am not to review the merits of such a decision, *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562–63, 96 S.Ct. 1048, 1055–56, 47 L.Ed.2d 231 (1976), for it is the arbitrator's interpretation that is bargained for by the parties, *Enterprise Wheel & Car Corp.*, 363 U.S. at 599, 80 S.Ct. at 1362. *Contrast S.D. Warren Co., supra,* at 185–86, where the court in reversing the district court's decision to enforce an arbitration award, held that the imposition of a punishment the parties did not bargain for did not draw its essence from the agreement. If the award were allowed to stand, the employer would lose in the arbitration process what it had earned the hard way at the bargaining table.

## C. *Modification of Terms of Collective Bargaining Agreement*

■ The Union's final argument is that the arbitrator impermissibly modified the contract by introducing a remedy based on the number of hours each employee would have worked on September 27 before the declaration of the state of emergency. As such a remedy is not explicitly stated in the agreement, the Union claims the award violates Article VII, § 1 of the agreement:

"The Arbitrator shall have no power to add to, detract from, or modify any of the terms of this Agreement." The company argues that such a provision does not preclude the arbitrator from finding the existence of an implied condition.

The arbitrator found that the requirement that the company notify the employees not to report to work by 6:00 A.M. applied only when the Act of God had occurred prior to that time.

> The suggested melding of the two sentences—requiring radio notification be given to employees by 6 A.M. in cases of plant closing and snowstorm, or else employees must be given eight hours' pay—works well when the precipitating event occurs before 6 A.M.... It does not work well, however, when the precipitating event occurs after 6 A.M., and pre–6 A.M. notification is impracticable, or even impossible.

The arbitrator further found that at the time the decision was made to close the plant, no actual Act of God existed. The decision was instead based on an expectation of such an event—the threat of a hurricane. The arbitrator states in his opinion:

> Hence, at 6 A.M. the first sentence of article VIII, § 7, with its exceptions and exemptions from notice and pay, was not yet applicable. By 8:30, however, a state of emergency had been declared which, given its genesis, constituted an act of God or circumstance beyond the control of the Company. At that point the first sentence became effective, and the Company's liability for pay ceased. To hold otherwise would produce an anomalous and illogical result. Clearly, had the Company allowed all employees who reported on September 27 to work, it could have dismissed them without penalty at 8:30 and paid these employees for either 1½ or 2½ hours, depending on when they started. That the Company should owe employees for eight hours simply because it did not have the employees first work for 1½ or 2½ hours makes no sense.

 While the remedy the arbitrator chose—pay for 1.5 or 2.5 hours—is not explicitly provided for in the contract, it is based on a logical interpretation of all of the agreement's provisions. As those who drafted the agreement may never have thought of what specific remedy should be awarded to meet the particular contingency in this case, the arbitrator is to be accorded flexibility in reaching a fair solution. *Enterprise Wheel & Car Corp.*, 363 U.S. at 597, 80 S.Ct. at 1361. As the agreement does not provide a stated remedy for the particular contingency in this case, the arbitrator was entitled to interpret the agreement to give force to all its provisions. Such action neither added to nor detracted from the provisions of the contract.

### 4. Conclusion

In accordance with the above, I deny the Union's motion for summary judgment vacating the remedy portion of the award. I grant the company's cross-motion for summary judgment upholding the arbitrator's award.

SO ORDERED.