**CADILLAC UNIFORM & LINEN SUPPLY, INC., Plaintiff,**

v.

**UNION de TRONQUISTAS de PUERTO RICO, LOCAL 901 OF the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS AND WAREHOUSEMEN, Defendant.**

Civil No. 94–2419 (GG).

United States District Court,
D. Puerto Rico.

March 14, 1996.

Agustin Collazo Mojica, Hato Rey, PR, for Plaintiff.

Jose E. Carreras Rovira, Hato Rey, PR, for Defendant.

### OPINION AND ORDER

GIERBOLINI, District Judge.

This is a petition for the vacation of an arbitration award that modified plaintiff Cadillac Uniform & Linen Supply, Inc.'s (Cadillac Uniform) disciplinary action against one of its employees, Mr. Eliezer Rivera.

Pending before this court is Cadillac Uniform's motion for summary judgment alleging that the arbitrator exceeded his authority by correcting the award after rendering it. Defendant Unión de Tronquistas de Puerto Rico, Local 901's (Unión de Tronquistas) duly opposes and through their cross motion for summary judgment request that the award be affirmed.

There is no controversy as to the facts of the case. The only issue of law before us is whether an arbitrator, after rendering an award and notifying it to the parties, may validly correct the same. After careful consideration of the particular circumstances present in this case and the prevailing case law, we conclude in the affirmative.

### BACKGROUND

Mr. Eliezer Rivera is one of plaintiff's employees and a member of the Unión de Tronquistas. On March 25, 1993, a violent incident occurred in the workplace between Mr. Rivera and Mr. Ruisdale Cosme, also an employee of Cadillac Uniform. Mr. Rivera admitted having incurred in the charged aggression against Mr. Cosme. Plaintiff determined that his conduct was a violation of Rule Number 1 of the company's Employment Rules and Disciplinary Actions and proceeded to immediately dismiss him from the employment. The Unión de Tronquistas, representing Mr. Rivera, exhausted the grievance procedure agreed upon by the parties in the collective bargaining agreement in force at the time.

Accordingly, an arbitrator was selected from the personnel of the Conciliation and Arbitration Bureau of the Puerto Rico Department of Labor and Human Resources.[1] The parties requested the selected arbitrator, Mr. José F. Pueyo Font, to determine whether Mr. Rivera's dismissal was justified and if not, to provide an adequate remedy.

The arbitrator determined in the award that the aggression was mainly provoked by Mr. Cosme when he told Mr. Rivera that he was going "to break his face". He concluded that said provocation was an extenuating ele-

---

1. The collective bargaining agreement establishes that the arbitrator shall be selected by the Puerto Rico Secretary of Labor among the personnel of the Conciliation and Arbitration Bureau of the Puerto Rico Department of Labor and Human Resources or selected by mutual agreement of both parties. See, Article IX, Section C, Step Num. 4(b) of the agreement.

ment which demanded a modification of the disciplinary action taken by plaintiff against Mr. Rivera. Furthermore, that Mr. Cosme's provocation was a verbal aggression that constituted a violation to Rules 1 & 8 of the company's disciplinary rules, under which a first offense leaded to dismissal. In spite of the preceding fact, Mr. Cosme was merely punished with a two (2) week suspension of employment and salary, while Mr. Rivera was dismissed for his first Rule 1 violation. Confronted with such disparity in the application of disciplinary sanctions, the arbitrator ruled Mr. Rivera's dismissal unjustified and substituted it with a two (2) week suspension and ordered his reinstatement without pay. However, on September 28, 1994, exactly ten (10) days after rendering and notifying the award to the parties, the arbitrator modified it ordering the reinstatement with pay instead of without pay, except for the two (2) weeks of suspension.

Dissatisfied, plaintiff filed the present action requesting that the amended part of the award be vacated because once an award is rendered, the arbitrator becomes *functus officio* and lacks authority to reexamine and correct his decision. Defendant opposed by filing a cross motion for summary judgment averring that this case falls within one of the exceptions of the *functus officio* doctrine, that which allows arbitrators to correct mistakes. Hence, defendant requests that the award, including the correction, be affirmed.

**THE *FUNCTUS OFFICIO* DOCTRINE:**

*Functus officio* means "a task performed; having fulfilled the function, discharged the office, or accomplished the purpose, and therefore of no further force or authority. Applied to an officer whose term has expired and who has consequently no further official authority." *Black's Law Dictionary*, West Publishing Co., 5th ed., 1979, pg. 606.

■ As a general rule in common law arbitration, once an arbitrator renders his decision regarding the issues submitted to him, he becomes *functus officio*. Therefore, his authority over the case is ended and he lacks power to reexamine the decision and to proceed any further. *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 572 (3rd Cir.1967); *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731 (9th Cir.), cert. denied, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); Elkouri, F. & Elkouri, E., *How Arbitration Works*, 4th ed., BNA, 1985, pg. 283. This doctrine was strictly applied at common law to preclude an arbitrator from vacating, modifying, supplementing, or correcting his award. *Courier–Citizen v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 278 (1st Cir.1983). It was originated when judges were hostile to arbitration as a mechanism to resolve disputes and were unwilling "to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion." *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, supra. See also, *Glass, Molders, Pottery, Plastics and Allied Workers International Union, AFL–CIO, CLC Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 846 (7th Cir.1995); *Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.*, 918 F.2d 1215 (5th Cir.1990), cert. denied 501 U.S. 1206, 111 S.Ct. 2799, 115 L.Ed.2d 972.

However, today federal courts, in fashioning the substantive law of labor relations, "have refused to apply the strict common law doctrine of *functus officio* ". *Courier–Citizen v. Boston Electrotypers Union No. 11*, supra at 279. This doctrine has even been described by some circuits as "riddled with exceptions" and "hanging on by its fingernails". *Glass, Molders v. Excelsior Foundry Co.*, supra. Also, it has been said that "whether [the doctrine] can even be said to exist in labor arbitration is uncertain". *Ibid.* See also, *Red Star Express Lines v. Brotherhood of Teamsters, Local 170*, 809 F.2d 103, 108 (1st Cir.1987) (concurring opinion).[2]

■ The First Circuit has identified several situations in which an arbitrator may in-

---

**2.** Senior Circuit Judge Brown stated in his concurring opinion that *functus officio* and all the other judge-made hostilities to arbitration went out with Lincoln Mills and the great flood of following cases in all the circuits.

terpret, amplify or correct his award, *functus officio* notwithstanding. These are the following:

> (1) when the award is incomplete and/or ambiguous;
>
> (2) when the court resubmits an issue to the arbitrator;
>
> (3) when a mistake is apparent from the face of the award;
>
> (4) when the parties request to resubmit an issue to the arbitrator.

See, *Red Star Express Lines v. Brotherhood of Teamsters*, supra, 106.

## CORRECTION OF MISTAKES

The exception of "mistakes apparent from the face of the award", which the defendant claims is applicable to this case, has been traditionally held to refer to evident miscalculations of figures or to evident mistakes in the description of any person, thing or property referred to in the award. *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, supra; *Hough v. Merrill Lynch, Pierce, Fenner & Smith*, 757 F.Supp. 283, 287 (S.D.N.Y.1991) (citing the CPLR section 7511c), aff. 946 F.2d 883 (2nd Cir. 1991). It has been suggested that this exception could also apply to facts subject to judicial notice. *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 332 (3rd Cir.1991). Under the purview of Rule 60(a) of the Fed.R.Civ.Proc., which regulates the correction of clerical mistakes at any time and by the court's own initiative, it is limited to errors arising from oversight or omission.

▮ The purpose behind this recognized power of adjudicators to correct mistakes apparent from the face of the award or judgment is to allow the award, judgment and record to speak the truth. Consequently, it cannot be used to make the award, judgment or record say something other than what originally was pronounced. 11 Wright & Miller, *Federal Practice and Procedure, Civil*, 2d. ed., § 2854, pgs. 241 & 248. See also, *McNickle v. Bankers Life & Cas. Co.* 888

F.2d 678 (10th Cir.1989); *Chávez v. Balesh*, 704 F.2d 774 (5th Cir.1983).

▮ In light of the above, the caselaw clearly differentiates between correcting an award because it was based on a mistaken view of fact or law and correcting an award to mend an error apparent from the face of the award. See, *Burton v. Johnson*, 975 F.2d 690, 694 (10th Cir.1992), cert. denied 507 U.S. 1043, 113 S.Ct. 1879, 123 L.Ed.2d 497. In the first instance, the arbitrator is clearly *functus officio* because it is correcting the substance of the award and because extraneous facts must be taken into consideration. Thus, the policies upon which the application of the doctrine to arbitral decisions stands could be subverted. See, *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, supra, and cases cited.

However, in the second situation, courts have recognized a valid exception to the rule and granted the arbitrator green light to proceed, because the substance of the award is not being compromised. On the contrary, it is being clarified as to express the adjudicators ever present intention. This is so, because these type of errors are perceived as mere blunders in writing out the decision, which, if acknowledge by the own arbitrator must be corrected by him. To hold otherwise, "would, at least from the common-sense point of view, seem absurd." *First Nat. Bank of Clarion v. Breneman*, 114 Pa. 315, 319, 7 A. 910 (Pennsylvania, 1886).[3]

The record before us is bereft of any indication that an ex-parte communication took place and that it could have been a motivating factor in the arbitrator's decision to amend it by way of the so called "List of Errata".[4] On the contrary, the text of the "List of Errata" establishes that the arbitrator acted by his own will and was merely correcting an unconscious error in the phrasing of the remedy. He expressly stated that he wanted to "spread upon the record that, unwittingly, [h]e ordered reinstatement to

---

**3.** Cited in *La Vale Plaza*, at p. 573 n. 16 in support and recognition of the long standing exception to the doctrine of "mistakes apparent upon the face of the award".

**4.** "Errata" means errors in writing or printing like those noted in a list of corrections. *The American Heritage Dictionary*, 2d. College Ed., 1985, pg. 463; *The Random House College Dictionary*, 1975, pg. 449.

his employment without pay" when the remedy should have been a two (2) week suspension and reinstatement with back pay, except for the two weeks of suspension.

It is clear from the discussion in the award that the arbitrator's intention was to situate Mr. Rivera in the same disciplinary level that the company had placed Mr. Cosme, that is, a two week suspension of employment and salary. The arbitrator expressly criticized the employer's discriminatory application of disciplinary sanctions in this case and concluded that Mr. Rivera's dismissal was not justified because:

> "the physical aggression committed by [him] was provoked by Mr. Cosme, and the Company should have applied the Discipline Regulations in the same way since the offenses committed by both the aggressor and the injured lead to dismissal in the first offense". (Emphasis supplied).

Therefore, the arbitrator was not reconsidering his award but just clarifying his intention, from the inception of the award, to suspend Mr. Rivera from employment and salary for two weeks. To hold otherwise, that Mr. Rivera's reinstatement was intended to be without back pay, would mean a suspension without pay for more than a year; Mr. Rivera's dismissal was on March 25, 1993 and the award was issued on September 4, 1994. Undoubtedly, to accept such a conclusion would contradict the arbitrator's clear intention, for it would be reinforcing the same disciplinary disparity he expressly criticized and decided to rectify through the award.

In conclusion, the arbitrator's unwitting error in ordering reinstatement without back pay is apparent from the face of the arbitral award. Its correction does not require the consideration of new and extraneous facts but only of those already taken into account when rendering the original award. In light of the above, we conclude that the arbitrator had authority to correct the award in order that his intended remedy could be enforced, that is, in order for the award and the record to speak the truth.

To deprive arbitrators of the power to *motu proprio* proceed in such a way would be reverting to the "bad old days when judges were hostile to arbitration and ingenious in hamstringing it." *Glass v. Excelsior,* supra at 846; *Courier–Citizen Co. v. Boston,* supra at 278. Such a back step is clearly inconsistent with the strong, well-established and widely recognized federal policy in favor of arbitration. *Vimar Seguros Y Reaseguros S.A. v. M/V SKY REEFER*, 29 F.3d 727, 730 (1st Cir.1994), affirmed 513 U.S. ——, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995); *Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. ——, ——, 115 S.Ct. 834, 837, 130 L.Ed.2d 753 (1995) (stating that the basic purpose of the Federal Arbitration Act is to overcome the judicial hostility to arbitration agreements); *First Options of Chicago, Inc. v. Kaplan,* 513 U.S. ——, ——, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Menorah Ins. Co., Inc. v. INX Reinsurance Corp.,* 72 F.3d 218, 222 (1st Cir.1995); *McCarthy v. Azure,* 22 F.3d 351, 354 (1st Cir.1994); *Commercial Union Ins. Co. v. Gilbane Bldg. Co.,* 992 F.2d 386, 388 (1st Cir.1993).

**WHEREFORE,** for the reasons stated above, and in consideration of the fact that the arbitrator's decision to correct the award was motivated by his own desire to rectify the phrasing of his intended remedy and that he proceeded within a reasonable period of time, the arbitrator's award and the "List of Errata" are hereby **AFFIRMED.** Thus, plaintiff's motion for summary judgment is **DENIED** and defendant's cross motion is **GRANTED.** Judgment will be entered accordingly.

**SO ORDERED.**