# The First National Bank of Clarion *versus* Brenneman's Executors.

1. The committee provided for by the 5th section of the Act of Congress of the 12th of July, 1882 (U. S. Statutes at large, 163), to appraise the national bank shares of shareholders who do not assent to amendments to the articles of association, possess no judicial functions, render no judgment, their proceedings are not of record, the approval may be rendered verbally or in writing, they may correct a mistake made by them in their approval within thirty days from the time of making the approval.

2. The power to correct mistakes is fundamental and inherent in all tribunals. The decision may be final while the expression may be open to correction. As a general rule, courts will find some way of correcting clerical errors, blunders in calculation, and the like.

October 5th, 1886. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. MERCUR, C. J., absent.

ERROR to the Court of Common Pleas of *Clarion county:* Of October Term 1885, No. 197.

This was an action of debt brought by Daniel E. Brenneman and William Brenneman, executors of the last will of Daniel Brenneman, deceased, against the First National Bank of Clarion, Pa.

The following facts appear from the affidavit of claim, and from the affidavit of defence filed in this case.

Daniel Brenneman's executors, owners of forty shares, par value $100 each, of the capital stock of the First National Bank of Clarion, total capital $100,000—withdrew from said association on the execution of its charter.

A committee was appointed to appraise the value of said

forty shares of stock under section 5, Act of Congress of July 12th, 1882, as follows:

That when any national banking association has amended its articles of association, as provided in this Act, and the comptroller has granted his certificate of approval—any shareholder not assenting to such amendment may give notice in writing to the directors, within thirty days from the date of the certificate of approval, of his desire to withdraw from said association, in which case he shall be entitled to receive from said banking association the value of the shares so held by him, to be ascertained by an appraisal made by a committee of three persons; one to be selected by such shareholder, one by the directors, and the third by the first two, and in case the value so fixed shall not be satisfactory to any such shareholder, he may appeal to the comptroller of the currency, who shall cause a re-appraisal to be made, which shall be final and binding, and if said re-appraisal shall exceed the value fixed by said committee, the bank shall pay the expenses of said re-appraisal, otherwise the appellant shall pay said expenses, and the value so ascertained and determined shall be deemed to be a debt due and be forthwith paid to said shareholder from said bank, and the shares so surrendered and appraised shall, after due notice, be sold at public sale within thirty days after the final appraisement provided in this section.

The committee made report. The plaintiffs tendered their certificates of stock and demanded payment which was refused, wherefore this suit was brought.

The following is the abstract of the affidavit of defence.

That the instrument sued on would not entitle plaintiff to judgment for want of a sufficient affidavit of defence.

That defendant has a good defence to part of plaintiff's claim, in that the committee selected to appraise the stock made a mistake in determining the value, by including the valuation fixed by them on the banking house and furniture, viz., $23,604.00, and adding said sum twice in the assets, thus erroneously increasing the amount of assets $23,604.00 beyond the amount agreed on, which, with other mistakes, erroneously increased the value of said shares from $173\frac{637}{1000}$ to $198 per share. That the intention of the committee was to fix the value of said stock at $173\frac{637}{1000}$, per share, but inadvertently, and by mistake, they reported the same at $198.00 per share. That the committee corrected their error by an amended report wherein they appraised the stock at $173\frac{737}{1000}$ per share. That notice of said amended report was given to the parties April 21st, 1885. That no appeal was taken therefrom by plaintiffs. That plaintiffs tendered their certificates and demanded payment, August 5th, A. D. 1885, and defend-

ant tendered $6,945.81, (which plaintiffs refused to accept), which sum defendant is ready and willing to pay.

Upon motion the court rendered judgment for want of a sufficient affidavit of defence for the amount fixed by the committee in their first report of April 1st, 1885, with interest amounting to $8,135.99.

The defendants thereupon took this writ, assigning for error the action of the court in entering judgment.

*James Breden* (*Jenks* and *Reed* with him), for plaintiffs in error.

We do not dispute the well settled principle, that a special tribunal, such as the commitee in this case, having once executed the power conferred on it, is *functus officio*.

Nor that parties voluntarily submitting the decision of their controversies to referees of their own selection, under an agreement that the award shall be final and conclusive, " without exception or appeal," do thereby agree to run the risk of mistakes by the arbitrators and deprive the courts of the powers they would otherwise have, to rectify such mistakes. The words " final and conclusive " alone in a voluntary submission have, however, no such effect, Mussina *v.* Hertzog, 5th Binn., 387 ; McCahan *v.* Reamy, 9th Casey, 535 ; and similar words in a statute ("final and binding " in this Act) in reference to a compulsory arbitration, will certainly have no greater effect.

The Pennsylvania statute of June 16th, 1836, allowing exceptions to awards for plain mistakes in fact, &c., has always been held to be merely declaratory of the law as it then existed, or, in the language of Judge Sharswood, in Rex *v.* Insurance Companies, 2d Philadelphia Rep., page 324, " merely declaratory of what has always been the law, as settled by the uniform determination of the courts, both in England and in this country." See also Coleman *v.* Lukens, 3 W. & S. 37 ; Etter *v.* Edwards, 4 Watts, 65 ; Christmas *v.* Thompson, 3 S. & R., 133 ; in Neal *v.* Shields, 2 P. & W., 300.

The general principle is stated in Story's Eq. Juris., sections 1456 and 1456*a*, " In regard to matters of fact, the judgment of the arbitrators is ordinarily deemed conclusive. If, however, there is a mistake of a material fact apparent upon the face of the award, or if the arbitrators are themselves satisfied of the mistake and state it, (although it is not apparent on the face of the award), and if in their own view it is material to the award, then, although made out by extrinsic evidence, courts of equity will grant relief. . . . . The mistake must be one which shows that the arbitrator was misled, . . . as by a mistake in computation." And see cases referred to : Knox *v.* Symonds, 1 Ves. Jr., 369 ; Rogers *v.* Dellimore, 6 Taunton,

111; Klein *v.* Catara, 2 Gallison, 69; Jones *v.* Boston Mill Co., 6 Pick, 148. As a general rule, the courts in the United States, and sometimes also in England, will find some way of correcting clerical errors, blunders in calculation, and the like." The mistake may be pleaded in an action on the award, Id., 332; Bean *v.* Farnam, 6 Pick., 269; Strong *v.* Strong, 9 Cushing, 560; Hale *v.* Handy, 26 N. H., 206.

*B. J. & D. B. Reid, D. E. Breneman,* for defendants in error. —The principle which controls this case, is clearly laid down by BALDWIN, J., in U. S. *v.* Arredondo, 6 Peters, 729, (Book 8, U. S. Sup. C. Rep., Law Ed., 561), as follows:

"It is an universal principle that, when power or jurisdiction is delegated to any public officer or tribunal over a subject matter, and its exercise is confided to his or their discretion, the acts so done are binding and valid as to the subject matter. . . . . The only question which can arise between an individual claiming a right under the act done, and the public, or any person denying its validity, are, power in the officer, and fraud in the party. All other questions are settled by the decision made or the act done by the tribunal or officers, whether executive, legislative, judicial or special; unless an appeal is provided for, or other revision, by some appellate or supervisory tribunal, is prescribed by law."

This principle is followed and reaffirmed in Bartlett *v.* Kane, 16 Howard, 272, (Book 14, Law Ed. 935;) and Belcher *v.* Linn, 24 Howard, 508, (Book 16, Law. Ed. 757). The same ruling is substantially recognized in Chorpening *v.* U. S., 3 Nott & Huntingdon, 140; and Stairs *v.* Peaslee, 18 Howard, 521, (Book 15, Law. Ed. 476.)

"It is now well established that at law nothing *dehors* the award invalidating it, can be pleaded or given in evidence to the jury. (2 Wils. 148.) The arbitrators are judges chosen by the parties themselves, and their awards are not examinable in a court of law, unless the condition is to be made a rule of court, and then only for corruption or gross partiality." Barlow *v.* Todd, 3 Johns., 369; affirmed in Cranston *v.* Kenny, 9 Id., 212; Perkins *v.* Wing, 10 Id., 143; Efner *v.* Shaw, 2 Wend., 567; Elmendorf *v.* Harris, 5 Id., 519; Emmet *v.* Hoyt, 17 Id., 413; Smith *v.* Lockwood, 7 Id., 244.

"Arbitrators exhaust their power when they make a final determination of the matters submitted to them, and they have no right afterward to alter their award." Bayne *v.* Morris, 1 Wall., 97; Talbot *v.* Hartley, 3 Cr., 31.

Mr. Justice GREEN delivered the opinion of the court, November 1st, 1886.

This action is founded upon the fifth section of the act of Congress of July 12th, 1882, which provides for the appraisal, by a committee of three persons, of the national bank shares of shareholders who do not assent to amendments to the articles of association. No provision is made for constituting the appraisal a proceeding of any court, or for filing it in any office or with any public officer, or even directing that it shall be in writing, or that the parties shall be notified of it. The act does not provide that when the value has been ascertained and determined, it shall be a debt due from the bank to the shareholder, to be forthwith paid, and this is what makes it a cause of action. The committee are simply to appraise the value of the shares ; they have no judicial functions, they hear no controversy, they render no judgment as upon a litigated cause, their proceedings are not of record, they are mere appraisers and, presumably, inform the parties of the fact, and amount of their appraisement. For aught that appears in the Act that information may be imparted verbally or in writing. If the shareholder is dissatisfied he may appeal to the Comptroller of the currency, and that officer is directed to cause a re-appraisal to be made which shall be final and binding. The Act does not prescribe the time within which the appeal must be taken, but as it does direct that the shares shall be sold within thirty days after final appraisement, the right of appeal could not be exercised after the expiration of that time. In the present case the appraisers, on April 1st, notified the parties in writing that they had appraised the shares at $198 per share, and on the 9th the owners notified the bank that they were satisfied with the valuation. On the 21st of April the appraisers again notified the parties that they had made a clerical error in computing the figures upon which their valuation was made by twice adding the valuation of one of the assets, to wit, the banking house and furniture appraised at $23,604, and they corrected the mistake which resulted in a corrected valuation of $173$\frac{637}{1000}$ per share. No part of the valuation actually made was changed. The real figures which composed the aggregate of the appraisement remained the same, and the appraisers did nothing but remove a double valuation of the same item unintentionally and mistakenly made. It would be strange indeed if this could not be done. Technically there is not a solitary reason why it could not. The time for appeal had not expired. No judgment award or decree had been entered or pronounced upon the appraisement they had made. Nothing in the Act of Congress gave, at the time the correction was made, any quality of finality to the appraisement made. The party affected could still appeal if he desired. The mistake was corrected by the parties who

made it.    The work of correction was as much a part of the
work of the appraisers as the appraisement itself.    Nothing in
the law under which they were acting took from them either
their control of the subject matter, or their power to correct
their own mistakes, at the time they assumed to correct this
mistake, and we know of no reason, legal, equitable or moral,
why they should not be permitted to make the correction in
question.    The power to correct mistakes even in judicial pro-
ceedings is fundamental and inherent in all tribunals, and is
constantly exercised in the daily practice of the courts.    The
right of the citizen to have mistakes corrected, is so thorough-
ly established, and so well recognized, that it is an independent
source of equitable jurisdiction and may also be enforced in
courts of law.    Thus money paid by mistake of fact may be
recovered back by action at law.    It is unnecessary to cite any
of the numerous authorities in which it has been held that
mistakes of arbitrators and referees may be corrected either by
themselves or by the courts.    The general principle is thus
stated in Story's Eq. Jurisprudence, § 1456 and 1456*a*.    "In
regard to matters of fact, the judgment of the arbitrators is or-
dinarily deemed conclusive.    If, however, there is a mistake
of a material fact apparent upon the face of the award, or if
the arbitrators are themselves satisfied of the mistake, and state
it (although it is not apparent on the face of the award), and
if in their own view it is material to the award, then, although
made out by extrinsic evidence, courts of equity will grant re-
lief,"—citing many authorities.    In Morse on Arbitrations and
Awards, p. 323, the writer says : "It is, however, clear that for
an admitted mistake of the arbitrators, a court of equity will
refer back an award ; " and on pages 326 and 327, referring
to mistakes in computation and clerical errors, he points out
that they are not mistakes in their decision itself, but blunders
in writing out the decision."    He says : "The decision may be
final, while the expression may be open to correction,—to say
that a court could not correct such 'blunder,' especially when
acknowledged by the arbitrator, would, at least from a com-
mon-sense point of view, seem absurd. . . . . . As a general
rule, the courts in the United States, and sometimes also in
England, will find some way of correcting clerical errors, blun-
ders in calculation, and the like."

There is nothing in Speer *v.* Bidwell, 8 Wright, 23, at all in
conflict with these views when applied to a case like the pres-
ent.    That was an action upon an award made in pursuance of
a submission, in which the parties agreed in writing to be ab-
solutely bound by the award without any right of appeal.    The
evidence offered and received on the trial was all to prove mis-
behavior of the arbitrators.    The only mistakes made or re-

[Bridge Co. v. Jackson.]

ferred to, in the opinion of this court, were mistakes in the action of the arbitrators in hearing ex parte affidavits, and especially in allowing as proof an affidavit of one of the parties to the payment of a sum of $640 which had not been paid, and that the unsworn declarations of an interested witness were privately received. These things were pronounced misbehavior, and the court below was sustained in receiving testimony of these various matters in defence against the award. We are of opinion that the learned court below was in error in entering judgment for want of a sufficient affidavit of defence; and, therefore,

The judgment is reversed, and procedendo awarded.