David STACK, Appellant

v.

KARAVAN TRAILERS, INC. t/a Karavan and Highway Marine Service, Inc. t/a Highway Marine and Highway Marine & RV, Appellees.

Superior Court of Pennsylvania.

Argued March 9, 2004.

Filed Dec. 16, 2004.

Todd M. Sailer, Longhorne, for appellant.

Alan T. Silko, Pittsburgh, for appellees.

Before: BOWES, McCAFFERY, and POPOVICH, JJ.

McCAFFERY, J.:

¶ 1 In this appeal, we must determine whether the trial court properly vacated the Corrected and Clarified Arbitration Decision and Award (hereinafter "Clarified Award") under the *functus officio* doctrine which prevents arbitrators from taking any further action once an arbitration award has been issued. Specifically, we are asked to decide whether any of the exceptions to this doctrine are applicable herein. We hold that the initial Arbitration Decision and Award (hereinafter "Initial Award") in this case contained a clear error which was apparent on the face of the award. Therefore, under the "mistake apparent on the face of the award" exception, we conclude that the Clarified Award

was properly entered. Accordingly, after careful review, we reverse the trial court's order vacating the Clarified Award in favor of the Initial Award, and we reinstate the Clarified Award.

¶ 2 The salient facts and procedural history are as follows. Appellant, David Stack (hereinafter "Stack") was involved in an accident in which he fell off a boat, which was then situated on a trailer, and suffered severe injuries. He proceeded to sue Karavan Trailers, Inc. (hereinafter "Karavan") (which had manufactured and sold the trailer), and Appellee, Highway Marine, Inc. (hereinafter "Highway Marine") (which had sold the trailer along with the boat), alleging negligence in the design, manufacture and sale of the trailer and the boat. Instead of a trial, the parties[1] agreed to submit to binding High/Low arbitration[2], to be governed by common law principles, before Thomas B. Rutter, Esquire ("Arbitrator Rutter") through ADR Options, Inc. (Arbitration Agreement and Stipulation, dated July 25, 2002). The arbitration at issue took place on October 4, 2002, with S. Richard Klinges, III, Esquire, representing Stack and Andrew Keenan, Esquire, representing Highway Marine.

¶ 3 Arbitrator Rutter issued the Initial Award on October 7, 2002. In Section C of that document, Arbitrator Rutter awarded Stack the gross sum of $2,500,000, with a total *molded* award of $1,000,000 as per the High/Low agreement of the parties. However, in Section A of that document, it appeared that 25% causal negligence had been attributed to Highway Marine, 50% had been attributed to Karavan (not a party to the arbitration)

---

1. Just prior to the start of the arbitration, Stack settled with Karavan, leaving Highway Marine as the sole remaining defendant, which is a critical factor in the instant disposition.

2. Stack and Highway Marine entered into a High/Low Agreement which stipulated to a low of $50,000 and a high of $1,000,000.

and 25% had been attributed to Stack.[3] This was a mistake. In fact, Arbitrator Rutter's actual decision had attributed 50% causal negligence to Highway Marine, and 25% to Karavan. The award reflected in Section A was the result of a clerical error in the transcription of Arbitrator Rutter's notes detailing his decision and award.

¶ 4 Three days later via a letter dated October 10, 2002, Highway Marine tendered to Stack a release in the amount of only $625,000 (representing 25% of the $2,500,000 *unmolded* award). Because this amount made no sense given the parties' molding agreement, Mr. Klinges, Stack's attorney, refused to execute the release. Instead, he had his assistant place a call to Michael Carney, President of ADR Options, Inc., seeking clarification of the exact amount of damages which Arbitrator Rutter intended Stack to receive from Highway Marine.[4] According to Arbitrator Rutter's testimony, when he was apprised of this message, he had his secretary retrieve the relevant file, as was his normal custom when questions arose about arbitration awards. Upon review of the file, he immediately discovered that the Initial Award did not, in fact, reflect the **actual findings** which

he had set forth in his handwritten notes, made right after the end of the arbitration proceeding. (Rutter Deposition Testimony ("Rutter D.T."), 12/16/02, at 22–27). Apparently, according to Mr. Carney's subsequent deposition, Mr. Carney had inadvertently transposed the amounts of liability attributable to each defendant when he prepared the Initial Award document. Arbitrator Rutter's notes clearly and unequivocally attributed 50% causal negligence to Highway Marine, 25% to Karavan and 25% to Stack.[5] (Carney Deposition Testimony ("Carney D.T."), 12/16/02, at 8–9).

¶ 5 After discovering the mistake in the Initial Award document, Arbitrator Rutter placed an *ex parte* call to Mr. Klinges on October 15, 2002, and advised him that the percentages of liability had been inadvertently transposed. (Rutter D.T. at 27–28). Following this conversation, Mr. Klinges wrote a formal letter to Arbitrator Rutter requesting clarification of the Initial Award as to each defendant.[6] (Letter from Mr. Klinges to Arbitrator Rutter, dated October 15, 2002).

¶ 6 In an effort to correct the Initial Award to reflect what his actual decision had been, Arbitrator Rutter issued a Corrected and Clarified Arbitration Award on

---

3. Sections A and C of the Initial Award, located in the Certified Record, are reprinted in full in the Appendix.

4. ADR's cover letter which had accompanied the Initial Award provided Carney's telephone number and an express invitation for the recipient to call with *any* questions.

5. Mr. Carney testified that under ADR Options' normal practice, arbitrators' awards were routinely forwarded to him for processing and preparation of the dispositional documents. Mr. Carney frequently transcribed Arbitrator Rutter's findings into his own handwriting, as Mr. Carney's secretary was unable to understand Arbitrator Rutter's handwriting. (Carney D.T. at 14–15). Mr.

Carney realized and acknowledged that he had, in fact, crossed out the percentages of liability which Arbitrator Rutter had assessed and had replaced them with incorrect ones, but he could not recall why he had done so. (*Id.* at 8–9).

6. This letter has been the subject of much contention. The letter made no mention of the *ex parte* conversation, and it is unclear whether the letter was written at Arbitrator Rutter's request and for what purpose. In his deposition testimony, Mr. Klinges asserts that he wrote the letter to note for his file that there was confusion regarding the award. (Klinges Deposition Testimony, 1/14/03, at 17–18).

October 15, 2002. This Clarified Award accurately reflected the percentages of liability which Arbitrator Rutter had assessed and set forth in his handwritten notes made right after the arbitration. (Rutter D.T. at 27–30). Highway Marine filed a petition to vacate the Clarified Award and for the entry of judgment in accordance with the Initial Award, since the Clarified Award required Highway Marine to pay substantially more than the Initial Award required. Both parties then took deposition testimony. Subsequently, the trial court granted Highway Marine's motion, entered judgment in favor of Stack in the amount of $625,000, and reinstated Arbitrator Rutter's Initial Award. This appeal followed.

¶ 7 Stack raises the following issues for our review:

1. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION OR COMMITTED ERROR OF LAW IN FINDING THAT ARBITRATOR RUTTER DID NOT HAVE AUTHORITY TO CORRECT A CLERICAL ERROR APPEARING ON HIS AWARD BY ISSUING THE CORRECTED AND CLARIFIED ARBITRATION DECISION AND AWARD.

2. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION OR COMMITTED ERROR OF LAW IN FAILING TO CORRECT THE ARBITRATION DECISION AND AWARD PURSUANT TO 42 C.S.A. [SIC] § 7315 OR REMAND THE MATTER TO ARBITRATOR RUTTER TO CLARIFY THE AWARD SINCE THE ARBITRATION DECISION AND AWARD IS CLEARLY AMBIGUOUS.

3. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION OR COMMITTED ERROR OF LAW IN FINDING THAT AN IRREGULARITY CAUSED THE RENDITION OF AN UNJUST, INEQUITABLE OR UNCONSCIONABLE AWARD.

(Stack's Brief at 5).

¶ 8 We note at the outset that our standard of review in the context of common law arbitration is limited:

The award of an arbitrator ... is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award. The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to reversal for a mistake of either. Furthermore, Appellant bears the burden to establish both the underlying irregularity and the resulting inequity by "clear, precise and indubitable evidence". In this context, irregularity refers to the process employed in reaching the result of the arbitration, not the result itself. In addition, as the arbitrator's authority is restricted to the powers the parties have granted them in the arbitration agreement, we may examine whether the common law arbitrator exceeded the scope of his authority. Finally, we note that a trial court order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law.

*Gargano v. Terminix International Co., L.P.*, 784 A.2d 188, 193 (Pa.Super.2001) (citations and quotations omitted).

¶ 9 Stack contends that the trial court abused its discretion by vacating Arbitrator Rutter's Clarified Award where the requisite "irregularity" upon which the trial court relied was not proven by clear, precise, and indubitable evidence. He contends that the trial court erred by not

applying the "mistake apparent on the face of the award" exception to the *functus officio* doctrine in this particular case. We agree.

 ¶ 10 The *functus officio* doctrine is a well-settled common law principle:

The general principle in a common law arbitration is that the arbitrators are the final judges of both the facts and the law and their decision will not be disturbed for a mistake of fact or of law. *P G Metals Co. v. Hofkin*, 420 Pa. 620, 218 A.2d 238 (1966).

\* \* \* \* \* \*

It is an equally fundamental common law principle that once an arbitrator has made and published a final award his authority is exhausted and he is functus officio and can do nothing more in regard to the subject matter of the arbitration. The policy which lies behind this is an unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion.

*La Vale Plaza, Inc. v. R.S. Noonan, Inc.,* 378 F.2d 569, 572–73 (3d. Cir.1967) (citing *Hartley v. Henderson,* 189 Pa. 277, 42 A. 198 (1899)).

¶ 11 However, three specific exceptions to the *functus officio* doctrine have been recognized:

(1) an arbitrator can correct a mistake which is apparent on the face of his award;

(2) where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination; and

(3) where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify.

*Colonial Penn Insurance Company v. Omaha Indemnity Company,* 943 F.2d 327, 332 (3d. Cir.1991) (citations omitted).

¶ 12 Instantly, the trial court found that the Clarified Award had been improperly entered as the *functus officio* doctrine rendered Arbitrator Rutter without authority to issue the Clarified Award, once the Initial Award had been issued. As a result, the trial court concluded that the issuance of the Clarified Award constituted an "irregularity" significant enough to warrant its vacating and the reinstatement of the Initial Award.

 ¶ 13 Further, the trial court specifically found that the exception for "mistakes apparent on the face of an award" did not apply in this case, as "the percentages of liability assessed, without more, does [sic] not on its [sic] face suggest that a mistake was made." (*See* Trial Court Opinion, dated July 30, 2003, at 7). The trial court also cited *Colonial Penn* to emphasize how chary courts should be in extending the limited exception for "mistakes apparent on the face of an award" when considering allowing the introduction and consideration of extraneous facts. We disagree with the trial court's determination, and, after a thorough review of the record, we conclude that the Arbitrator's Clarified Award was properly entered because the Initial Award does fall under the first exception to the *functus officio* doctrine - - here, due to a clerical error.

¶ 14 In this case, viewed from the perspective of those involved in the arbitration, there is a clear and obvious mistake present on the face of the Initial Award - - the incongruity between Section A and

Section C. (*See* Appendix). In Section A (Liability Findings), the document indicates that Highway Marine, the only remaining defendant in the arbitration, was 25% liable. This would have meant that Highway Marine owed Stack $625,000 (25% of $2,500,000), which is exactly what Highway Marine rushed to tender to Stack. However, in Section C, the document indicates that Stack was awarded *molded* damages of $1,000,000 based upon a total award of $2,500,000. Reading these two sections together, as one must, the mistake is clear and apparent, as the Initial Award makes no mathematical sense *on its face*. Because Highway Marine was the only defendant who was a party to the High/Low agreement (which capped any damages awarded to Stack at $1,000,000), the molded award of $1,000,000 could only be assessed against Highway Marine. However, clearly, 25% of $2,500,000 is not $1,000,000, it is $625,000. Indeed, if Highway Marine were only 25% liable and therefore owed Stack only $625,000, there would have been no need to mold the award at all, as the damages assessed against Highway Marine would not have exceeded $1,000,000. Therefore, Arbitrator Rutter did have the authority, under the "mistake apparent on the award's face" exception, to issue a corrected award.[7]

¶ 15 Further, a careful review of the relevant case law reveals that the theoretical underpinnings of the "mistake apparent on the face of the award" exception are strongly rooted in the context of arbitrators acknowledging and correcting their own clerical mistakes. In the seminal case, *La Vale Plaza, supra*, cited in *Colonial Penn*, the Third Circuit Court of Appeals provided a comprehensive review of the

*functus officio* doctrine, and set forth three specific exceptions thereto, including the instantly relevant exception for "mistakes apparent on the face of an award": "The principle that an award once rendered is final contains its own limitation, however, and it therefore has been recognized in common law arbitration that the arbitrator can correct a mistake which is apparent on the face of **his** award." *Id.* at 573 n. 16. (emphasis added) *La Vale Plaza* relies on, *inter alia, The First National Bank of Clarion v. Brenneman's Executors*, 114 Pa. 315, 7 A. 910 (1886) in support of this proposition.

¶ 16 In *First National Bank*, the Pennsylvania Supreme Court focused upon a clerical mistake made in the appraisal of stock, an error discovered and corrected by the appraisers themselves. Our high court emphasized that arbitrators **must** be permitted to correct their own mistakes: "It is unnecessary to cite any of the numerous authorities in which it has been held that mistakes of arbitrators and referees may be corrected either by themselves or by the court." *Id.* at 320, 7 A. 910. Moreover, the Court emphasized the dichotomy between mistakes of fact and mere clerical errors:

> [R]eferring to mistakes in computation and clerical errors…they are not mistakes in the decision itself, **but blunders in writing out the decision.…** The decision may be final, **while the expression may be open to correction.** To say that a court could not correct such 'blunders,' **especially when acknowledged by the arbitrator**, would, at least from a common-sense point of view, seem absurd.

*Id.* at 320, 7 A. 910 (quotation omitted, emphasis added).

---

7. Our disposition of Stack's first issue obviates the need to address his second issue. Because we conclude that the Arbitrator act-

ed properly in issuing the Clarified Award, there is no need to remand the Initial Award for clarification.

¶ 17 In addition, although there is an unfortunate dearth of case law regarding the "mistake apparent on the face of the award exception", we find the discussion set forth in *Cadillac Uniform & Linen Supply, Inc. v. Union de Tronquistas de Puerto Rico,* 920 F.Supp. 19 (D.Puerto Rico 1996), to be persuasive. In that case, the court was asked to determine whether an arbitrator could correct his award where he mistakenly reinstated an employee "without pay" instead of "with pay" due to a clerical error. In response, that court provided the following, thoughtful analysis regarding the "mistake apparent on the face of the award" exception:

> [T]he case [ ] law clearly differentiates between correcting an award because it was based on a mistaken view of fact or law and correcting an award to mend an error apparent from the face of the award. *See, Burton v. Johnson,* 975 F.2d 690, 694 (10th Cir.1992), *cert. denied* 507 U.S. 1043, 113 S.Ct. 1879, 123 L.Ed.2d 497. In the first instance, the arbitrator is clearly *functus officio* because it is correcting the substance of the award and because extraneous facts must be taken into consideration. Thus, the policies upon which the application of the doctrine to arbitral decisions stands could be subverted. *See, Colonial Penn Ins. Co. v. Omaha Indem. Co., supra,* and cases cited.
>
> However, in the second situation, courts have recognized a valid exception to the rule and granted the arbitrator [a] green light to proceed, because the substance of the award is not being compromised. On the contrary, it is being **clarified as to express the adjudicators ever present intention.** This is so, because these type of errors are perceived as **mere blunders in writing out the decision, which, if acknowledge[d] by the own arbitrator must be corrected by him. To hold otherwise, "would, at least**

**from the common-sense point of view, seem absurd."** *First Nat. Bank of Clarion v. Breneman,* 114 Pa. 315, 319, 7 A. 910 (1886).

*Cadillac Uniform* at 22 (emphasis added and in original). We strongly agree with the distinction drawn in *Cadillac Uniform* between mistakes of fact and clerical mistakes made in the course of "writing out" arbitration awards. The former often requires an arbitrator to consider extraneous facts in order to recognize the mistake. However, an arbitrator can certainly identify clerical errors without the consideration of extraneous facts. Indeed, to prohibit an arbitrator from correcting his own acknowledged clerical blunder would contravene not only long-standing Pennsylvania jurisprudence but also common-sense. *See First National Bank, supra.*

¶ 18 Further, the trial court's reliance upon the *Colonial Penn* case is misplaced. In *Colonial Penn,* the Third Circuit declined to find a clear mistake on the face of an instrument, but it was under a very different fact scenario. There, the award mentioned "reserves" which Colonial Penn did not actually have. However, there was no way for the arbitrator to know that these reserves did not exist without reference to extraneous testimony. *Id.* at 332–333. Instantly, no such "mistake of fact" exists. Instead, there is an obvious clerical error apparent on the face of the award which requires no additional testimony to identify, and should, therefore, fall under the "obvious mistake" exception to the *functus officio* doctrine. Indeed, as discussed above, it is precisely this type of "blunder" made in the "writing out" of the award that the "mistake apparent on the face of the award" exception was intended to remedy. Hence, Arbitrator Rutter had the proper authority to issue the Clarified Award.

¶ 19 In his third issue, Stack asserts that the trial court erred by finding that the *ex parte* communication at issue in this case was significant enough to have constituted an irregularity which necessitated the vacating of the Clarified Award and the reinstatement of the Initial Award. We agree.

¶ 20 The trial court cites *Government Employees Insurance Company v. Lane,* 264 Pa.Super. 615, 401 A.2d 765 (1979), for the proposition that any *ex parte* communication constitutes a serious irregularity sufficient to reverse an arbitrator's award. In *Government Employees,* this Court took the extraordinary step, *sua sponte,* to reverse a second, clarified award and remand for re-arbitration where an attorney had contacted an arbitrator to express confusion over the first award which had been issued. *Id.* at 768–769. However, that case is distinguishable, because there was no clear mistake on the face on the first award - - the award clearly granted damages of $20,000. Rather, the confusing element was whether *both* plaintiffs were to share the $20,000, or whether *each* was to receive $20,000 individually. In that case, we emphasized that the *ex parte* communication violated the applicable arbitration guidelines [8], which precluded *any* communication between arbitrators and attorneys. Here, no such guidelines were in place under ADR Options. In fact, the cover letter transmitted with the Initial Award encouraged the parties to call with any questions.

¶ 21 It is also important to note that Mr. Klinges originally contacted the President, Mr. Carney, not Arbitrator Rutter, to clarify the apparent inconsistency on the face of the award. Indeed, Mr. Klinges was instructed by ADR Options to call Mr. Carney with any questions he might have via the cover letter, dated October 7, 2002, which he received with the Initial Award. Further, according to the deposition testimony of both Mr. Klinges and Arbitrator Rutter, the one short phone call between Arbitrator Rutter and Mr. Klinges was initiated by the Arbitrator specifically in order to let Stack know that a clerical mistake had been made, and the underlying merits of the case were not implicated or discussed. This one short phone call does not rise to the level of an irregularity serious enough to warrant the reversal of Arbitrator Rutter's Clarified Award where a clear inconsistency was present on the face of the Initial Award and the parties were in fact directed to call with any questions.

¶ 22 Based on the foregoing reasons, we conclude that Arbitrator Rutter had the authority to enter and acted properly in entering the Clarified Award. Therefore, we reverse and vacate the June 19, 2003 order of the Bucks County Court of Common Pleas which had vacated the Clarified Award and had entered judgment in accordance with the Initial Award. In addition, we reinstate the Clarified Award and direct the parties to comply therewith.

¶ 23 Order reversed and vacated. Clarified Award reinstated. Jurisdiction relinquished.

---

8. In *Government Employees,* the parties were subject to the American Arbitration Association guidelines. *Id.* at 768–769.

APPENDIX

ARBITRATION DECISION AND AWARD

RE: David Stack vs. Karavan Travelers & Highway Marine

A. Liability Findings

Both Defendants are negligent for failure to warn about the need to use a strap down while one is in the boat for any purpose or when the boat is on the trailer

| | | |
|---|---|---|
| Defendant 1 | Highway Marine | 25% |
| Defendant 2 | Karavan Trailer | 50% |
| Other Defendants | | % |
| Plaintiff | David Stack | 25% |

\* \* \* \* \*

C. After a full hearing and arguments of counsel in the above-captioned matter, I award the Plaintiff, $1,000,000.00 as molded pursuant to the agreement of the parties.

| | |
|---|---|
| Gross Award | $2,500,000.00 |
| Less 25% | ($625,000.00) |
| **Total Net Award** | $1,875,000.00 |
| **Total Molded Award** | $1,000.000.00 |

| | | |
|---|---|---|
| ARBITRATOR | NAME | Thomas B. Rutter, Esquire |
| | SIGNATURE | |
| | DATE | October 7, 2002 |