J-A17021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JAMES L. PFEIFFER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES BRUNO, INDIVIDUALLY, | : | |
| AND AS SHAREHOLDER OF PFEIFFER | : | |
| AND BRUNO, P.C.,  PFEIFFER AND | : | No. 2805 EDA 2022 |
| BRUNO, P.C. A/K/A OR D/B/A BRUNO | : | |
| LAW | : | |
| | : | |
| Appellants | : | |

Appeal from the Order Entered September 30, 2022
In the Court of Common Pleas of Northampton County
Civil Division at No(s):  C-48-CV-2021-02702

| | | |
|---|---|---|
| JAMES L. PFEIFFER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES BRUNO, INDIVIDUALLY, | : | No. 2861 EDA 2022 |
| AND AS SHAREHOLDER OF PFEIFFER | : | |
| AND BRUNO, P.C.,  PFEIFFER AND | : | |
| BRUNO, P.C. A/K/A OR D/B/A | : | |
| BRUNO LAW | : | |

Appeal from the Order Entered September 30, 2022
In the Court of Common Pleas of Northampton County
Civil Division at No(s):  C-48-CV-2021-02702

BEFORE:   KING, J., SULLIVAN, J., and PELLEGRINI, J.*

MEMORANDUM BY SULLIVAN, J.:                    **FILED DECEMBER 13, 2023**

---

* Retired Senior Judge assigned to the Superior Court.

Appellant/Cross-Appellee James L. Pfeiffer ("Pfeiffer") and Appellee/Cross-Appellant Charles Bruno ("Bruno") individually, and as a shareholder of Pfeiffer and Bruno, P.C. ("the law firm"), a/k/a or d/b/a Bruno Law (collectively, "Bruno Law") appeal from the trial court's order denying confirmation of a common law arbitration award.[1] We affirm and remand with instructions.

In 2007, Pfeiffer and Bruno entered into shareholders' agreements signed sixth months apart relating to the law firm they formed.[2] In 2019, Pfeiffer left the law firm. In 2021, an arbitration panel convened to determine the compensation due to Pfeiffer.[3]

On February 8, 2022, the arbitration panel awarded Pfeiffer $907,213.80, and granted Bruno Law's claim for $173,500.50, representing a credit for 50% of the financial obligations of the law firm (the "first award").

---

[1] **See** Pa.R.A.P. 311(a)(8); **see also** 42 Pa.C.S.A. §§ 7320, 7321.29(a), 7342(a).

[2] Because the shareholders' agreements, executed in January and June 2007, have identical language relating to the issues relevant to this appeal we refer to them as one agreement ("the shareholders' agreement"). The shareholders' agreement compels the arbitration of controversies and states that arbitration shall be the sole and exclusive remedy for the parties, the arbitration decision shall be finding and binding, and any party to any award rendered may seek a judgment upon the award. **See** Shareholder Agreement, 1/30/07, at 24 (§ 8.3 Arbitration); Shareholder Agreement, 6/22/07, at 27-28 (§ 8.3 Arbitration).

[3] The compensation dispute concerned the classification of cases for the purposes of applying the shareholder agreement's compensation formula. That issue is not presented in this appeal.

Bruno Law issued a check, which Pfeiffer cashed, for the full amount of the first award. Within three days of that award, Pfeiffer sent a letter to the arbitration panel claiming a mistake of fact, *i.e.*, that the $173,500.50 the panel awarded Bruno Law had already been deducted from Pfeiffer's profit share. **See** Bruno Law's Brief in Support of Petition to Confirm First Arbitration Award, 5/11/22, Exhibit E, at unnumbered 2. Bruno Law filed an opposition to Pfeiffer's response citing provisions of the Uniform Arbitration Act ("UAA"), 42 Pa.C.S.A. §§ 7301-7320. **See id**., Exhibit F.

On February 15, 2022, the arbitration panel issued an amended award to Pfeiffer of $1,080,714.30 (the "amended award"). The panel stated that it amended its award "due to a computational miscalculation where we deducted $173,500 from the original award when this amount was previously accounted for by [Bruno Law] in the year-end profit distribution made to [Pfeiffer] for 2019." Amended Award, 2/15/22, at 1. Bruno Law timely issued a check for the additional $173,500.00 to Pfeiffer; Pfeiffer cashed that check.

On February 22, 2022, Pfeiffer filed a second reconsideration motion with the arbitration panel. **See** Pfeiffer's Response to Bruno Law's Petition to Confirm First Arbitration Award, 4/4/22, Exhibit B. On March 14, 2022, Bruno Law petitioned the Court of Common Pleas ("the trial court") to confirm the first award and vacate the amended award, arguing that the shareholders' agreement required the application of common law arbitration rules, and under the applicable rules the amendment was not permitted, **see** 42

- 3 -

Pa.C.S.A. §§ 7341-7342. They asserted that because Pfeiffer did not appeal the first award or the amended award within thirty days but instead filed reconsideration motions with the arbitration panel, the court was compelled to confirm the first award. *See* Trial Court Opinion, 9/30/22, at 3. In response, Pfeiffer asserted both the Revised Statutory Arbitration Act ("RSAA"), 42 Pa.C.S.A. §§ 7321.1-7321.31, and the UAA permitted the panel to amend the award. *See* Pfeiffer's Response to Bruno Law's Petition to Confirm First Arbitration Award, 4/4/22, at 4, 7-12. The arbitration panel stayed consideration of Pfeiffer's second reconsideration motion until the trial court disposed of Bruno Law's motion. *See* Statement by Arbitrators, 3/24/22; Trial Court Opinion, 9/30/22, at 3.

In April 2022, the trial court held a hearing regarding the petition, and determined that common law arbitration rules governed the shareholders' agreement, not the subsequently enacted RSAA or the UAA, and rejected Pfeiffer's claim that Bruno Law was estopped from seeking common law arbitration because *inter alia*, Pfeiffer had itself previously argued that common law arbitration applied to stay judicial proceedings in this case. *See* Trial Court Opinion, 9/30/22, at 4-8. The trial court denied Bruno Law's request that it confirm the first award and vacate the amended award. It held the first award was not final because Pfeiffer had filed a reconsideration motion before the arbitration panel, and the court lacked jurisdiction over the first

award and must await the arbitration panel's determination of finality. ***See***

***id***. at 8-11.[4]

Pfeiffer filed an appeal; Bruno filed a cross-appeal. Both parties and the

trial court complied with Pa.R.A.P. 1925.

Pfeiffer presents three issues for review:

1. Whether the trial court committed an error of law and/or abused its discretion by finding that the arbitration between the parties was governed by common law . . . rather than the Revised Statutory Arbitration Act ("RSAA") . . . where the RSAA specifically directs the applicability of Statutory Arbitration . . . to the subject dispute and not common law . . . ?

2. Whether the trial court committed an error of law and/or abuse of discretion in its failure to consider the applicable statutory provisions with reference to its entire context and legislative history?

3. Whether the trial court committed an error of law and/or an abuse of discretion by determining that [Bruno Law are] not estopped from arguing the arbitration is governed by common law where [Bruno Law] previously argued otherwise?

Pfeiffer's Brief at 10.

On cross-appeal, Bruno Law presents six issues for review:

1. Whether the trial court committed an error of law and/or an abuse of discretion in finding that the [first award] was not a final award?

2. Where the trial court should have confirmed the [first award] . . . because [Pfeiffer] failed to file an appeal with the trial court within thirty . . . days from the date the award was issued and therefore was estopped from doing so at a later date?

3. Whether the trial court committed an error of law and/or an abuse of discretion when it held that [Pfeiffer's] motion for

---

[4] As noted, the arbitration panel has stayed its proceedings pending this Court's decision.

reconsideration submitted to the Arbitration Panel tolled the thirty . . . day time period for appeals to the trial court . . . where the law governing common law arbitrations does not provide for such a tolling?

4. Whether the trial court should have vacated the . . . [a]mended [a]ward because the Arbitration Board [sic] exceeded its authority when it issued the amended award to provide for an increased amount of the award?

5. Whether the trial court committed an error of law and/or an abuse of discretion in failing to hold that [Pfeiffer] waived his right to challenge either arbitration award through his actions in accepting and depositing the first and second settlement checks paid by [Bruno Law]?

6. Whether the trial court correctly concluded that the arbitration and subsequent court proceedings are governed by the common law procedure because the agreement to arbitrate found within the underlying Shareholders' Agreement between the [p]arties, is an agreement to arbitrate which shall be conclusively presumed to be an agreement to arbitrate pursuant to Subchapter B . . . related to common law arbitration?

Bruno Law's Brief at 8-9.

Pfeiffer's first two issues, and Bruno Law's sixth issue implicate the nature of the arbitration agreement between the parties. As these issues present the same questions of law, and arise from related facts, we address them together.

In Pennsylvania, arbitration agreements can be governed by the RSAA, the UAA, or common law. Section 7321.4 of the RSAA, entitled "When subchapter applies," states that agreements preceding the statute's July 1, 2019 effective date are only governed by the RSAA where all the parties agree to its application; if not, "Subchapter A (relating to statutory arbitration)

governs the agreement." 42 Pa.C.S.A. § 7321.4(a), (b).[5] Subchapter A (statutory arbitration) refers to the UAA. The UAA's Scope of subchapter provision, 42 Pa.C.S.A. § 7302, provides:

> An agreement to arbitrate a controversy on a non-judicial basis shall be conclusively presumed to be an agreement to arbitrate pursuant to Subchapter B (relating to common law arbitration) unless the agreement to arbitrate is in writing, and expressly provides for arbitration pursuant to this subchapter or any other similar statute . . ..

42 Pa.C.S.A. § 7302(a).

"Statutory interpretation presents a question of law and, as such, our standard of review is *de novo*, while our scope of review is plenary." **Stoloff v. Neiman Marcus Group, Inc.**, 24 A.3d 366, 369 (Pa. Super. 2011) (internal citation and quotations omitted). In interpreting the UAA, "a reviewing court must, as in interpreting all statutes, ascertain the intent of the General Assembly. It is axiomatic that the best indication of the intent of the legislature is usually found in the plain language of a statute." **Fastuca v. L.W. Molnar & Associates**, 10 A.3d 1230, 1239 (Pa. 2011) (internal citations omitted).

Pfeiffer's first two issues assert the UAA applies to the shareholder's agreement. He claims after the RSAA's effective date only cases then in progress or where the right to arbitration had accrued could be the subject of

---

[5] The shareholders' agreement does not refer to the RSAA (it was not adopted at the time the parties entered into the agreement), and there is no representation that the parties amended the shareholders' agreement to designate the application of the RSAA.

common law arbitration, and the UAA governs all other cases. *See* Pfeiffer's Brief at 27-28; Pfeiffer's Reply Brief at 23-24. Pfeiffer argues the UAA's presumption of common law arbitration absent a contrary agreement conflicts with the RSAA. Finally, Pfeiffer asserts that a historical and statutory note to the common law arbitration statute states that the addition of the RSAA and the amendments to common law arbitration "shall not be construed to affect an action or proceeding commenced or right accrued before the effective date of this section," and asserts that supports the application of the UAA. Pfeiffer's Brief at 25-27, quoting Historical and Statutory Notes to §7341.1.

The trial court concluded that because the shareholders' agreement contains no written, express agreement to RSAA or UAA arbitration, common law arbitration applies. *See* Trial Court Opinion, 9/30/22, at 3-5. The court rejected Pfeiffer's argument that the purpose of the RSAA is to eliminate common law arbitration and that common law arbitration only exists for cases that were in progress, or where the right accrued before, the RSAA's effective date. Concerning the historical and statutory note to the common law statute, the court stated that if the "General Assembly wanted to do away with common law arbitration altogether, they would have done so clearly rather than by relegating it to a historical note in the enacting bill." *See id*. at 8.

We do not find error in the trial court's decision that common law arbitration rules govern this arbitration. In ***Foster v. Nuffer***, 286 A.2d 279 (Pa. Super. 2022), this Court addressed an arbitration agreement that, like

the instant one, pre-dated the RSAA and did not expressly elect UAA arbitration. The Court explained that although the RSAA was passed to wind down common law arbitration, where an arbitration agreement predates the RSAA and is thus governed by the UAA's applicability provisions, the arbitration is a common law arbitration unless the parties expressly chose to be governed by the UAA. **See id**. at 284 n.3.

The UAA provides that an agreement to arbitrate "**shall be conclusively presumed** to be an agreement to . . . [common law arbitration] "unless the agreement to arbitrate is in writing, and expressly provides for arbitration pursuant to this subchapter or any other similar statute. . .." 42 Pa.C.S.A. § 7302(a). That language is clear and free from all ambiguity, a fact not altered by the RSAA's provision that where it does not apply, the UAA "governs the agreement." **See Foster**, 286 A.3d at 284 n.3.[6] Because the best indication of the intent of the legislature is usually found in the plain language of a statute, **Fastuca**, 10 A.3d at 1239, we will not look beyond those words. **See** 1 Pa.C.S.A. § 1921(b) (stating that where the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit); **Estate of Benyo v.**

---

[6] Even were this Court inclined to look behind the plain language of the UAA to the legislative and historical note Pfeiffer cites, we would agree with the trial court that had the General Assembly intended to eliminate common law arbitration, it would have done so clearly rather than in a historical note in an enacting bill. **See** Trial Court Opinion, 9/30/22, at 8.

***Breidenbach***, 233 A.3d 774, 781 (Pa. 2020) (citations omitted) (stating that if a statute's language "clearly and unambiguously" sets forth legislative intent, a court is obligated to apply that intent to the case under consideration and "not look beyond the statutory language to ascertain its meaning").

Pfeiffer's asserted conflict between the RSAA's alleged directive to apply "statutory arbitration rules only – never common law," to arbitrations initiated or arising after the RSAA's effective date, ***see*** Pfeiffer's Brief at 30, lacks foundation. Pfeiffer does not cite any provision so stating, and the ***Foster*** Court did not perceive the alleged conflict when it interpreted the RSAA's and UAA's scope provisions. The trial court therefore drew the proper conclusion that common law arbitration applied in this case.[7]

Pfeiffer's final issue asserts the trial court erred for not precluding Bruno Law from asserting the application of common law arbitration because they invoked the UAA as a basis for precluding amendment of the first award in a previous filing. ***See*** Pfeiffer's Brief at 32-34.[8]

---

[7] In light of our assent that the trial court properly determined the application of the common law rules of arbitration in this matter, there is no need to address Bruno Law's sixth issue: that the trial court correctly concluded common law arbitration applied. ***See*** Bruno Law's Brief at 49-54.

[8] Pfeiffer also asserts that the fact that Bruno Law have not prevailed on their request for the application of UAA rules – the second prong of establishing the right to estoppel discussed below – is immaterial because the stay of arbitration proceedings prevented resolution of that question. ***See*** Pfeiffer's Brief at 31-39.

Judicial estoppel applies only when a party has taken an inconsistent position in an earlier action and his contention was "successfully maintained." *See Black v. Labor Ready, Inc.*, 995 A.2d 875, 878 (Pa. Super. 2010); *see also Shell v. Shell*, --- A.3d ---, ---, 2023 WL 6397310 at *10 (Pa. Super., filed 10/3/23); *Vargo v. Schwartz*, 940 A.2d 459, 470 (Pa. Super. 2007).[9] Judicial estoppel prevents parties from abusing the judicial process by changing positions "as the moment requires." *Trowbridge v. Scranton Artificial Limb Co.*, 747 A.2d 862, 865 (Pa. 2000) (internal citation and quotation omitted). Furthermore, the doctrine of unclean hands necessitates one seeking equity to act fairly, without fraud or deceit, concerning the controversy at issue. *See Adoption of S.A.J.*, 838 A.2d 616, 625 (Pa. 2003).

The trial court rejected Pfeiffer's estoppel claim because nothing in the record shows the parties agreed to UAA arbitration or that the arbitration panel used UAA procedures. *See* Trial Court Opinion, 9/30/22, at 5-6; *see also* 42 Pa.C.S.A. 7302(a) (stating that there is a presumption of common law arbitration absent a contrary, written agreement). The trial court further noted that Pfeiffer himself made contradictory averments regarding the

---

[9] The Supreme Court has not definitively stated that it is strictly necessary that the position be "successfully maintained" to invoke judicial estoppel or whether that is merely a factor favoring its application. *Vargo v. Schwartz*, 940 A.2d 459, 470 n.8 (Pa. Super. 2007). *But see Hospital and Healthsystem Ass'n of Pa. v. Com.*, 77 A.3d 587, 596 n.9 (Pa. 2013) (stating that a party is estopped from making an argument contrary to a position on which it *prevailed* in a prior phase of the case).

- 11 -

applicable arbitration provisions. In his response to Bruno Law's Motion to Compel Arbitration, Pfeiffer attached what he alleged was the parties' signed agreement for **common law** arbitration.[10] **See** Trial Court Opinion, 9/30/22, at 5-6, citing Pfeiffer's New Matter in Response to Motion to Compel Arbitration and Stay Judicial Proceedings.

We find no error in the trial court's refusal to find Bruno Law judicially estopped from advocating for the application of common law arbitration principles. Neither party appears to have invoked the UAA either in writing in their agreement, or at the arbitration, and there is no evidence the panel utilized it. Moreover, Bruno Law did not prevail on their assertion to the arbitration panel that the UAA barred the grant of the amended award, and therefore did not "successfully maintain" a UAA argument. **See Black**, 995 A.2d at 878; **Shell**, 2023 WL 6397310 at *10; **Vargo**, 940 A.2d at 470. Conspicuously, and contrary to Pfeiffer's position on appeal, his estoppel argument fails to mention he initially argued for the application of common law arbitration.

**See Adoption of S.A.J.**, 838 A.2d at 625. For these reasons, Pfeiffer's argument merits no relief.

---

[10] **See** Pfeiffer's Response to Bruno's Motion to Compel Arbitration, 5/10/21, ¶65 and Exhibit L (stating that "[t]his agreement to arbitrate is an agreement for common law arbitration unless the parties agree expressly in writing for arbitration pursuant to the Uniform Arbitration Act. . ..").

Turning to Bruno Law's appellate assertions, their first issue on cross-appeal asserts the trial court committed an error of law when it determined the first award was not final and declined to confirm it. As the trial court has stated, and we concur, the arbitration panel must first determine the finality of the award applying the common law rules of arbitration before this issue can be addressed on appeal. In light of our determination, this issue is not ripe for determination.[11]

Bruno Law's second through fifth issues assert claims that are for the arbitration panel to resolve in the first instance. Accordingly, we decline to address them at this time.

For the foregoing reasons, we affirm the trial court's determination that the parties' dispute was the subject of common law arbitration and applying these rules the arbitration panel must determine whether the first award constituted a final award or was properly modified based on a "computational miscalculation". Because the trial court did not formally remand the case to

---

[11] We note that pursuant to the doctrine of *functus officio*, once an arbitration panel has made and published a final award, its authority is exhausted and it can do nothing more in regard to the subject matter of the arbitration. **See Stack v. Karavan Trailers, Inc.**, 864 A.2d 551, 556 (Pa. Super. 2004). However, exceptions to *functus officio* permit an arbitrator to: (1) correct a mistake on the face of the award; (2) adjudicate an issue he or she has not adjudicated, and (3) correct an ambiguity as to whether the submission has been fully executed. **See id**.

the arbitration panel and the arbitration panel has stayed proceedings during the pendency of this case, we direct the trial court to remand this case to the arbitration panel for further determinations consistent with this opinion.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/13/2023