J-A05002-18 & J-A05003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NOVA SIGN GROUP | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BUNTING GRAPHICS, INC. | : | No. 3202 EDA 2017 |
| v. | : | |
| | : | |
| | : | |
| TURNER CONSTRUCTION COMPANY | : | |

Appeal from the Order Entered August 25, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  02052 October Term, 2015

| | | |
|---|---|---|
| NOVA SIGN GROUP | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BUNTING GRAPHICS, INC. | : | |
| | : | |
| Appellants | : | No. 3287 EDA 2017 |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TURNER CONSTRUCTION COMPANY | : | |

Appeal from the Order Entered August 25, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 02052 October Term, 2015

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS*, P.J.E.

_____
*   Former Justice specially assigned to the Superior Court.

J-A05002-18 & J-A05003-18

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 25, 2018**

In these consolidated appeals,[1] Nova Sign Group ("Nova") appeals at No. 3202 EDA 2017 from the August 25, 2017 Order granting Bunting Graphic, Inc's ("Bunting") Motion for Summary Judgment. Bunting appeals at No 3287 EDA 2017 from the same August 25, 2017 Order granting Turner Construction Company's ("Turner") Motion for Summary Judgment. After careful review, we affirm the Order appealed at No 3202 EDA 2017, and dismiss Bunting's appeal at No. 3287 EDA 2017 as moot.

The facts and procedural history are as follows. Turner entered into a construction management contract with Eagles Stadium Operator, LLC ("Owner"), the owner of Lincoln Financial Field in Philadephia. On April 16, 2014, Turner entered into a $1,289,128.00 subcontract with Bunting, a contractor engaged in the manufacture and installation of architectural signage and ornamental metals. Pursuant to the subcontract, Bunting was to provide the signage and wayfinding[2] for Lincoln Financial Field.

On May 20, 2014, Bunting entered into a $275,000.00 sub-subcontract with Nova, whereby Nova agreed to install the signage that Bunting fabricated and delivered to the site.

---

[1] We have consolidated these appeals *sua sponte*.

[2] Wayfinding includes information systems that guide people through a physical environment.

**The Sub-Subcontract**

The sub-subcontract between Nova and Bunting contained the following relevant provisions detailing the procedure by which the parties would handle disputes between them. In particular, the parties agreed that: (1) if Nova had a claim against the Owner, Nova would pursue that in claim in the Court of Common Pleas; (2) if Nova had a claim against Bunting, Nova would pursue that claim in arbitration; and (3) if Bunting believed that Nova's claim against it was actually the responsibility of the Owner, Nova would stay the arbitration until Nova resolved its claim against the Owner:

> [11(b)] In case of any dispute between [Bunting] and [Nova], in any way relating to or arising from any act or omission of the Owner or involving the Contract Documents[3], [Nova] agrees to be bound to [Bunting] to the same extent that [Bunting] is bound to Owner, by the terms of the Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder by the party, board or court so authorized in the Contract Documents or by law, whether or not [Nova] is a party to such proceedings. In case of such dispute, [Nova] will comply with all provisions of the Contract Documents allowing a reasonable time for [Bunting] to analyze and forward to the Owner any required communications or documentation. [Bunting] will, at its option, (1) present to the Owner, in [Bunting's] name, or (2) authorize [Nova] to present to the Owner, in [Bunting's] name, all of [Nova's] claims and answer the Owner's claims involving [Nova's] work, whenever, [Bunting] is permitted to do so by the terms of the contract documents. . .
>
> [11(c)] Any controversy between [Bunting] and [Nova] not relating to or arising from any action or inaction of the Owner and not involving the Contract Documents shall be decided by arbitration in accordance with the Construction Industry

Arbitration Rule of the American Arbitration Association…**If [Bunting] notifies [Nova] that [Bunting] contends any arbitration brought under this Article 11.c. involves a controversy within the scope of Article 11.b., the arbitration shall be stayed until the procedures under Article 11.b. are completed and it is determined thereunder that the controversy does not fall within Article 11.b.**

[3] The term "Contract Documents" in the sub-subcontract refers to the sub-contract between Bunting and Turner.  *See* Sub-Subcontract, 5/20/14, at 1, Exhibit A.

Sub-Subcontract, 5/20/14, Article 11(b)-(c) (emphasis added).

## The Dispute

The dispute that led to the instant matter involves 47 invoices that Nova provided to Bunting and that Bunting refused to pay.  As a result, on November 26, 2014, Nova submitted a demand for arbitration.  Pursuant to Article 11(c) of the sub-subcontract, Bunting notified Nova by letter of its belief that "[t]he invoices are for alleged acts that have arisen as a result of the [O]wner and the contract documents."  Bunting's Mot. for Sum. J. Exhibit G, 11/28/14 Bunting Letter.  Bunting, thus, requested that Nova stay the arbitration proceedings until it could be determined whether Nova's claims were caused by an act or omission of Owner as provided in Article

11(c). *Id.* On December 3, 2014, Nova denied Bunting's request to stay the arbitration by letter.[4] *Id.* Exhibit H, 12/3/14 Nova Letter.

The parties proceeded to arbitration over the non-payment of all 47 Nova invoices. Following hearings, the arbitrator issued a decision on September 22, 2015, which awarded Nova payment for 35 of the 47 disputed invoices in the amount of $187,421.99. The arbitrator did not issue a decision on 12 of the invoices because he determined that they involved the Owner, fell within Article 11(b) of the sub-subcontract and, "as such, those claims are not arbitrable." *Id.* Exhibit F, 9/22/15 Arbitration Award. The arbitrator further stated that, "[p]er agreement of the parties [Nova] has reserved its rights to present those non-arbitrable claims in a different forum." *Id.*

On October 20, 2015, Nova filed a Complaint against Bunting raising claims of Breach of Contract and Unjust Enrichment arising from Bunting's refusal to pay the 12 outstanding Nova invoices. On March 3, 2016, Bunting filed an Answer with New Matter. Nova filed a Reply to Bunting's New Matter on March 15, 2016.

On November 22, 2016, Bunting filed a Joinder Complaint against Turner asserting claims for Contribution/Indemnification, Breach of Contract,

_____

[4] In particular, Nova stated that it "respectfully denies your request and intends to proceed with administration of its Demand for Arbitration in accordance with the applicable rules of the AAA." 12/3/14 Nova Letter.

and Quantum Meruit. Turner filed Preliminary Objections to the Joinder Complaint on December 22, 2016, to which Bunting filed an Answer on January 11, 2017. On January 24, 2017, the court sustained Turner's Preliminary Objections in part, and dismissed Bunting's Breach of Contract and Quantum Meruit claims. The court overruled Turner's Preliminary Objection to the Contribution/Indemnification claim. On February 13, 2017, Turner filed an Answer with New Matter to the remaining claim, and Bunting filed a Reply to New Matter on March 6, 2017.

On June 16, 2017 and June 19, 2017, Turner and Bunting, respectively, filed Motions for Summary Judgment. Bunting sought dismissal of Nova's claims, alleging that the doctrines of *res judicata* and collateral estoppel barred them, and that Nova had waived its right to assert claims against Bunting in the Court of Common Pleas when it brought those same claims first in a private arbitration. Turner sought dismissal of Bunting's claims, asserting that Bunting had failed to establish facts legally sufficient to support a common law indemnity claim.

On August 25, 2017, the trial court granted Bunting's and Turner's Motions for Summary Judgment. On September 18, 2017, Nova filed the

appeal docketed at No. 3202 EDA 2017. On September 25, 2017, Bunting

filed the appeal docketed at No. 3287 EDA 2017.[5]

Nova raises the following four issues on appeal:

1.      Whether the [t]rial [c]ourt erred as a matter of law and abused its discretion by not considering the agreement between Nova and Bunting that was entered into during the [a]rbitration and specifically referenced in the Award of the [a]rbitrator[?]

2.      Whether the [t]rial [c]ourt erred as a matter of law and abused its discretion when it did not find that Bunting was [j]udicially [e]stopped from claiming Nova waived its rights to present its claims to the [t]rial [c]ourt[?]

3.      Whether the [t]rial [c]ourt erred as a matter of law and abused its discretion by finding that the doctrines of *res judicata* and collateral estoppel precluded Nova from presenting its claims against Bunting[?]

4.      Whether the [t]rial [c]ourt erred as a matter of law and abused its discretion by finding that Nova was precluded from presenting its claims against Bunting in the Court of Common Pleas pursuant to the Contract[?]

Nova's Brief at 5 (reordered for ease of disposition).

Bunting raises the following two issues on appeal:

1.      Whether the trial court abused its discretion and/or committed an error of law by finding that Bunting was not entitled to indemnification from Turner on a theory of liability over [*sic*] because Bunting cannot premise liability upon the same cause of action as alleged by Nova[?]

2.      Whether the trial court abused its discretion and/or committed an error of law by premising its dismissal of Bunting's

---

[5] Bunting acknowledges that if this Court affirms the portion of the trial court's Order granting summary judgment in its favor, its appeal from the portion of the Order granting summary judgment in Turner's favor is moot.

> **indemnification** claim on a finding that Pennsylvania only authorizes **contribution** among joint tortfeasors[?]

Bunting's Brief at 4 (emphasis in original).

We first address the claims raised by Nova. Each of Nova's four issues challenge the trial court's Order granting summary judgment in favor of Bunting. Our Supreme Court has clarified our role as the appellate court as follows:

> On appellate review [ ] an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

*Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (citations and quotation marks omitted).

A trial court may grant summary judgment "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citation and quotation marks omitted); *see also* Pa.R.C.P. No. 1035.2(1). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party." *Summers*, *supra* at 1159 (citation omitted). "In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party,

and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt." *Id.* (citation and internal quotation marks omitted).

To the extent that Nova's issues on appeal require us to interpret the sub-subcontract between Nova and Bunting, we note that our standard of review regarding contract interpretation is well-settled. "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." *Ragnar Benson, Inc. v. Hempfield Twp. Mun. Auth.*, 916 A.2d 1183, 1188 (Pa. Super. 2007) (citation omitted). "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision." *Id.*

## Nova's First and Second Issues: Alleged Reservation of Rights

In its first and second issues, Nova claims that the court erred in not considering the "agreement" between Nova and Bunting that occurred during the Arbitration, and in not finding Bunting judicially estopped from arguing that Nova waived its rights to present its claims in the Court of Common Pleas. Nova's Brief at 15-17.

As a prefatory matter, we note that the "agreement" between Nova and Bunting in which Nova purports that the parties agreed that Nova preserved its rights to present its outstanding claims against Bunting in a different forum is not in the Certified Record. In addition, the trial court

- 9 -

noted in its August 25, 2017 Opinion that "because the parties have not provided this court with any further agreement," it presumed that the agreement to which the arbitrator was referring in his Order was the parties' sub-subcontract. Trial Ct. Op., 8/25/17, at 4 n.3.

It is an appellant's responsibility to provide the appellate court with a complete certified record.

> [A]n appellate court cannot consider anything which is not part of the record in this case. Any document which is not part of the official certified record is considered to be nonexistent, which deficiency may not be remedied by inclusion in the reproduced record. It is the responsibility of the appellant to provide a complete record to the appellate court on appeal…. Where a review of an appellant's claim may not be made because of such a defect in the record, we may [deem] the issue waived.

**Eichman v. McKeon**, 824 A.2d 305, 316 (Pa.Super. 2003) (internal citations and quotation marks omitted). **See also** Pa.R.A.P. 1921, Note (stating: "An appellate court may consider only the facts which have been duly certified in the record on appeal"). Because Nova did not provide either the trial court or this Court with a copy of the alleged agreement, Nova has waived these issues.[6]

_____

[6] To the extent that the agreement to which Nova refers in this issue is the sub-subcontract between it and Bunting, our review of the sub-subcontract belies Nova's claim that Nova reserved its right to present non-arbitrable claims in a different forum. Rather, the sub-subcontract clearly provides that Nova is to stay arbitration until further determination of the nature of the claims can be made pursuant to Article 11(b). Nova declined to stay the arbitration and, thus, chose to submit all 47 claims to arbitration.

**Nova's Third Issue: *Res Judicata* and Collateral Estoppel**

Because the trial court applied the doctrines of collateral estoppel and *res judicata* in granting Bunting's Motion for Summary Judgment, we also observe that, "[c]ollateral estoppel, or issue preclusion, is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated." **Weissberger v. Myers**, 90 A.3d 730, 733 (Pa.Super. 2014) (citation omitted). Collateral estoppel applies when, *inter alia*, "a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." **Office of Disciplinary Counsel v. Kiesewetter**, 889 A.2d 47, 51 (Pa. 2005) (citation omitted). Collateral estoppel applies to bar re-litigation of an issue where

> (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

**Century Indemnity Co. v. OneBeacon Ins. Co.**, 173 A.3d 784, 805 (Pa. Super. 2017) (citation omitted).

"Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits by a court of competent jurisdiction will bar any future action on the same cause of action between the parties and their privies." **Mariner Chestnut Partners, L.P. v. Lenfest**, 152 A.3d 265, 286

(Pa. Super. 2016) (citations and quotation marks omitted). The "doctrine therefore forbids further litigation on all matters which might have been raised and decided in the former suit, as well as those which were actually raised therein." *Id.*

In support of its claim that the trial court erred when it applied the doctrines of *res judicata* and collateral estoppel to support its grant of Bunting's Motion for Summary Judgment, Nova first argues that its claims against Bunting were not barred because the arbitrator did not make a final determination of the merits of Buntings' potential liability for payment of the 12 outstanding invoices. Nova's Brief at 13. Nova specifically cites the trial court's failure to "address or contemplate the agreement between the parties which was memorialized in the Arbitration Award[,]" and argues that the court erred in precluding it from bringing its claims because "per the agreement of the parties, the Arbitration agreement expressly allowed Nova to present those claims in a different forum." *Id.*

With respect to Nova's averment that the trial court erred in finding that its claims against Bunting were barred because the Arbitrator did not decide the merits of Bunting's liability for the outstanding 12 invoices, the trial court found that the Arbitrator specifically concluded that those 12 claims arose due to an act or omission of the Owner, not Bunting, and, thus, fell within Article 11(b). Trial Ct. Op. at 6. The 12 claims the Arbitrator concluded arose from the Owner's conduct—and were, thus, not Bunting's

responsibility—are the same 12 claims that are the subject of the instant litigation. The sub-subcontract specifically provided that "[t]he award rendered by the arbitrators shall be final[.]"[7] Article 11(c). The court, therefore, concluded that the doctrines of *res judicata* and collateral estoppel prohibit Nova from forcing Bunting to re-litigate the issue of liability for payment of the 12 invoices. *Id.* at 7.

We discern no error. The trial court properly concluded that the decision of the arbitrator that the Owner, and not Bunting, was the cause of the 12 outstanding claims, entitled Bunting to judgment as a matter of law. The trial court aptly found that because Nova had already brought all of its claims against Bunting to arbitration—rather than stay the arbitration as required under Article 11(c) while the parties determined the arbitrability of the disputed claims—and the Arbitrator had made a final decision as to all of Nova's claims, the doctrines of *res judicata* and collateral estoppel barred Nova from suing Bunting in the Court of Common Pleas for a second time on the same claims. Accordingly, Nova's third issue fails to warrant relief.

**Nova's Fourth Issue: Nova's Refusal to Stay Arbitration**

In its last issue, Nova claims that the trial court erred in concluding that Nova failed to follow the procedures for resolving disputes between the

---

[7] *See also Stack v. Karavan Trailers, Inc.*, 864 A.2d 551, 556 (Pa. Super. 2004) (citation omitted) (reiterating the general principle that "arbitrators are the final judges of both the facts and the law").

parties set forth in the sub-subcontract. Nova's Brief at 14. Nova also claims that Bunting waived its right to raise the issue of Nova's waiver because Bunting did not file a Motion to Stay Arbitration when Nova refused to pursue the claims Bunting alleged arose from Owner's acts or omissions.

The trial court explained that Article 11(c) of the parties' sub-subcontract required Nova to stay the arbitration upon receipt of notice from Bunting that Bunting believed some of the claims for which Nova sought payment originated from an act or omission of the Owner. Specifically, the court explained that

> Nova was provided with a clear procedure by which to settle its disputes with Bunting, but Nova failed to follow that procedure. Under the terms of the parties' contract, **Nova should have stayed its arbitration upon receipt of Bunting's letter requesting they do so** in November 2014. At that point, Bunting would have had to either: (1) present Nova's claims to the Owner in Bunting's name or (2) allow Nova to present its claims in Bunting's name. Then, at the conclusion of that proceeding, Nova would have been permitted to present its remaining claims against Bunting in arbitration.

Trial Ct. Op. at 7. The court, thus, concluded that "Nova had an opportunity to stay its arbitration and seek the jurisdiction of this court properly, but it waived that opportunity." *Id.*

We agree with the trial court. When Bunting notified Nova by letter dated November 28, 2014, that it believed that "[t]he invoices are for alleged acts that have arisen as a result of the [O]wner and the contract

documents[,]"[8] Article 11(c) of the sub-subcontract required Nova to stay the arbitration "until the procedures under Article 11.b. are completed and it is determined thereunder that the controversy does not fall within Article 11.b."[9] Nova failed—in fact, refused—to follow this directive and, instead, proceeded to arbitration on all claims, where the arbitrator determined that Bunting was not liable for 12 of the claims.

With respect to Nova's claim that because Bunting did not file a Motion to Stay Arbitration, Bunting has waived its right to assert that Nova waived its right to re-assert these claims, we conclude that the parties' sub-subcontract imposed no such obligation on Bunting. Rather, as discussed **supra**, Article 11(c) required Bunting to notify Nova if Bunting believed that it was not liable for the claims pursued by Nova. Bunting fulfilled its obligation under the sub-subcontract, but Nova refused to stay the arbitration as required by Article 11(c). Nova is, therefore, not entitled to relief on this claim. Accordingly, we affirm the Order granting summary judgment to Bunting.

Having resolved Nova's claims in Bunting's favor, we need not address the merits of the claims Bunting raised in its protective appeal filed at No. 3287 EDA 2017. We, thus, dismiss Bunting's appeal as moot.

_____

[8] **See** Bunting's 11/28/14 Letter.

[9] **See** Sub-subcontract, 5/20/14, at Article 11(c).

Order affirmed at No. 3202 EDA 2017.  Appeal dismissed at No. 3287 EDA 2017.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/18